489 A.2d 228

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Richard YACOUBIAN, Appellant.**

Superior Court of Pennsylvania.

Argued May 9, 1984.

Filed March 1, 1985.

414

416

Michael F. X. Coll, Media, for appellant.

Helen T. Kane, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WICKERSHAM, WIEAND and MONTEMURO, JJ.

WIEAND, Judge:

Richard Yacoubian, alleged to be the leader of a burglary and drug ring in Upper Darby, Delaware County, was found guilty by a jury of seven counts of theft by receiving stolen property,[1] possession and possession with intent to make delivery of controlled substances,[2] corrupt organizations,[3] and eight counts of criminal conspiracy.[4] On direct appeal, he argues (1) that he was incorrectly found guilty of violating the corrupt organizations statute; (2) that incriminating evidence should have been suppressed because the search warrant pursuant to which the evidence was seized had not been issued upon probable cause and also because the search conducted by police exceeded the authority granted by the warrant; (3) that the court committed trial error; and (4) that the sentence was excessive. Our review discloses only a sentencing error. This requires a remand for resentencing.

The Corrupt Organizations section of the Crimes Code, appearing at 18 Pa.C.S. § 911, proscribes in subsection (b) the following activities:

> (1) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity in which such person participated as a principal, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in the acquisition of any interest in, or the establishment or operation of, any enterprise: Provided, however, That a purchase of securities on the open mar-

1. 18 Pa.C.S. § 3925.
2. 35 Pa.S. § 780–113.
3. 18 Pa.C.S. § 911.
4. 18 Pa.C.S. § 903.

ket for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issue held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern of racketeering activity after such purchase, do not amount in the aggregate to 1% of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer: Provided, further, That if, in any proceeding involving an alleged investment in violation of this subsection, it is established that over half of the defendant's aggregate income for a period of two or more years immediately preceding such investment was derived from a pattern of racketeering activity, a rebuttable presumption shall arise that such investment included income derived from such pattern of racketeering activity.

(2) It shall be unlawful for any person through a pattern of racketeering activity to acquire or maintain, directly or indirectly, any interest in or control of any enterprise.

(3) It shall be unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

(4) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (1), (2) or (3) of this subsection.

The term "enterprise" is defined in subsection (h)(3) as "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity, engaged in commerce." This legislatively created offense is based upon Chapter 96 of Title 18 of the United States Code, 18 U.S.C. §§ 1961–1968, entitled Racketeer Influenced and Corrupt Organizations (RICO).

Appellant argues that the Pennsylvania statute was intended to protect legitimate business enterprises from infiltration by racketeers and did not create a separate criminal offense for participating in an association performing only illegal acts. A similar argument was advanced with respect to RICO and rejected by the Supreme Court in *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). Looking to the express language of RICO, the Supreme Court found that the term "enterprise" was unrestricted and, therefore, broad enough to include both legitimate and illegitimate enterprises.

In determining the scope of the Pennsylvania statute, we also look to the language of the statute. When we do this, we find, as with RICO, that the term "enterprise" is unrestricted and sufficiently broad to include both legitimate and illegitimate enterprises. Appellant argues, however, that the preamble to the Pennsylvania statute suggests that the legislature was primarily concerned with infiltration of legitimate businesses by organized crime. This is undoubtedly correct. However, nothing in the preamble requires the restricted scope of the statute advocated by appellant. Neither the preamble nor the express language of the statute prevents its proscription from reaching enterprises organized and existing for illegal purposes. "Accepting that the primary purpose of [18 Pa.C.S. § 911] is to cope with the infiltration of legitimate businesses, applying the statute in accordance with its terms, so as to reach criminal enterprises, would seek to deal with the problem at its very source." *United States v. Turkette, supra*, 452 U.S. at 591, 101 S.Ct. at 2533, 69 L.Ed.2d at 260. The recognized sources in many instances are, as here, the fencing of stolen property and the illicit distribution of drugs.

Although theft by receiving stolen property and unauthorized drug distributions are made criminal by other statutory provisions, the corrupt organizations section of the Crimes Code is not superfluous. This section enables law enforcement to reach the criminal enterprise which has

no legitimate dimension or has yet to achieve one. To prove a violation of the corrupt organizations provision, the Commonwealth must prove more than the commission of a crime. It must also prove an enterprise. Thus, the Commonwealth was required to show in the instant case that the fencing of stolen property was the work of a group of individuals acting together, or an association, whose purpose was to engage in the commerce of selling stolen goods.

■ The evidence in this case tended to show that appellant had been head of a ring of burglars engaged in stealing silver from residences and synagogues in eastern Pennsylvania and western New Jersey. Persons who had participated in such burglaries and who testified under grants of immunity or pursuant to plea bargains testified that the stolen silver and other goods had been delivered to appellant who sold the same in altered form to silver dealers. He paid the men who stole the silver in cash or drugs when they needed it and kept a tally book in which credits and debits were shown. There was also testimony that on some occasions appellant would himself designate the places and times when burglaries were to be committed and would select the person or persons to commit the crimes. There was also evidence that appellant had been engaged in selling illegal drugs from a dry cleaning establishment which he owned. The evidence demonstrated, when considered in toto, a racketeering enterprise in violation of the section proscribing corrupt organizations.

■ A search at the Lansdowne Cleaners, owned by Yacoubian in Upper Darby, had produced various items of stolen property. Appellant argues that there was no probable cause for the search warrant and that the warrant, which had been issued for drugs, did not authorize the seizure of stolen property. The affidavit established the following facts:

On or about January 29th, 1981 and February 4th, 1981, Affiant Rudy D'Alesio was told by a confidential and reliable informant who has given information in the past

that has led to the arrest of four (4) individuals for violation of the controlled substance, drug, device and cosmetics act, that he, the confidential informant bought illegal drugs from Richard Yacoubian at Lansdowne Tailors, 267 Wycombe Avenue, Upper Darby, Pennsylvania for the past five (5) years. On or about February 26th, 1981 this confidential informant advised affiant Detective Edward Crawford that he went into the Lansdowne Cleaners, 267 Wycombe Avenue, Upper Darby, Pennsylvania and spoke with Richard Yacoubian regarding buying marijuana. Richard Yacoubian told this informant that he Richard Yacoubian did not have any marijuana at the time but to check back later. On March 27th, 1981, this confidential informant went to the Lansdowne Cleaners, 267 Wycombe Avenue, Upper Darby, Pennsylvania and bought eleven (11) black capsules for thirty ($30.00) dollars from Richard Yacoubian who told the informant the capsules were speed.

On April 6th, 1981 at about 2:15 p.m., officer William Johnson observed two (2) white females park in front of the Lansdowne Cleaners in a black pickup truck and one white female now known to be Elizabeth Jordon enter the Lansdowne Cleaners carrying a denim jacket on her arm. He then observed the same female leave the cleaners after staying inside for about two minutes and re-enter the truck. The truck was then observed leaving and was stopped at Marshall Road and Jackson Avenue, by officers Frank Guille and Joseph Holyenek. Found in the blue denim jacket which officer Johnson observed Elizabeth Jordon carry into and out of the Lansdowne Cleaners was one (1) plastic bag containing about thirty (30) grams of a off yellowish powder suspected to be methamphetamine. Also found in this Denim Jacket was one Hypodermic needle. These articles were found by officer Frank Guille.

The operator of the black pickup truck was one Kathy Mullen who stated that she gave Elizabeth Jordon a ride

to the Lansdowne Cleaners because Elizabeth Jordon said she wanted to check on some drugs. Also Kathy Mullen stated that after leaving the cleaners Elizabeth Jordon told her that she got the drugs and they had to get out of there because they were going to be photographed by the cops.

Based on the above information these affiants believe that the above stated location and individuals have in their possession illegal drugs and related paraphernalia and there for [sic] request that a search warrant be issued.

Whether one applies the two-pronged test of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) or the totality of the circumstances test adopted in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983),[5] it is readily apparent that the suppression court correctly concluded that the warrant to search for illegal drugs had been issued upon probable cause. Yacoubian had no expectation of privacy with respect to the truck being driven by Kathy Mullen or the jacket being carried by Elizabeth Jordon. Similarly, he had no interest in the controlled substance whose possession he had surrendered to a third person. Thus, he could not require that the Commonwealth, in order to establish probable cause for believing the substance had originated in his dry cleaning establishment, prove the validity of the police stop of the Mullen vehicle. See: *Commonwealth v. Metzger*, 295 Pa.Super. 267, 441 A.2d 1225 (1981). Contrary to appellant's contention, moreover, the reliability of Mullen and Jordon, who had been eyewitnesses to the events narrated to the police and who had made declarations against penal interest, was

5. The totality of the circumstances test has not been adopted by the Supreme Court of Pennsylvania for purposes of interpreting Article I, Section 8 of the Pennsylvania Constitution. See: *Commonwealth v. Jones*, 506 Pa. 262, 484 A.2d 1383 (1984). The test announced in *Illinois v. Gates*, however, has been followed by the Superior Court in *Commonwealth v. Ensminger*, 325 Pa.Super. 376, 473 A.2d 116 (1984) and *Commonwealth v. Gray*, 322 Pa.Super. 37, 469 A.2d 169 (1984).

clearly established. See: *Commonwealth v. Moyer*, 270 Pa.Super. 393, 411 A.2d 776 (1979).

When the police, in execution of the warrant for controlled substances, came upon silver jewelry, candlesticks and Jewish religious artifacts believed to be stolen, they were not required to ignore them. "Where police have a right to be in the position of observation, they can lawfully seize objects in plain view." *Commonwealth v. Mitchell*, 489 Pa. 537, 540, 414 A.2d 1021, 1023 (1980) quoting from *Commonwealth v. Harris*, 479 Pa. 131, 138, 387 A.2d 869, 873 (1978); *Commonwealth v. Millard*, 273 Pa.Super. 523, 528, 417 A.2d 1171, 1174 (1979); *Commonwealth v. Casuccio*, 308 Pa.Super. 450, 468, 454 A.2d 621, 630–631 (1982). The incriminating character of the evidence, however, must be apparent. We agree with the trial court that the contraband in this case was properly seized. The police were lawfully on the premises and the suspicious secreting of silver and other items throughout the cleaning establishment, combined with the officer's knowledge of recently stolen property and Yacoubian's reputation as a fence, supported the officer's conclusion that the items were contraband. *Commonwealth v. Millard, supra; Commonwealth v. Cascuccio, supra.*

Appellant next complains because the Commonwealth introduced evidence of burglaries committed at the Suburban Jewish Community Center, Temple Sholom and Kenneth Clay residence which it failed to connect by evidence with appellant. To prove appellant's role in an alleged burglary ring, the Commonwealth relied upon the testimony of accomplices. It is correct, as appellant avers, that their testimonies did not connect appellant with the burglaries at the Jewish Temple and Community Center and that the testimony connecting him with the Clay burglary was hypothetical. The trial court denied a defense motion for mistrial on this ground, but instructed the jury that the evidence failed to show that appellant had been involved in these burglaries and that the evidence of such burglaries, therefore, was irrelevant and should be ignored.

 The decision whether to declare a mistrial is within the discretion of the trial court, and its decision will not be reversed in the absence of a flagrant abuse thereof. *Commonwealth v. Stokes,* 279 Pa.Super. 361, 371, 421 A.2d 240, 245 (1980). There was no abuse of discretion in the instant case. This is not a situation in which a defendant was prejudiced by evidence that he had committed crimes unrelated to the offense for which he was being tried; and decisions requiring a mistrial under such circumstances are not apposite. The evidence of burglaries at the Clay residence and at the Temple and Community Center did not prejudice appellant, for there was no evidence that he was in any way involved in them. When the Commonwealth's proof failed to connect him with these burglaries, appellant was not entitled to a mistrial on other charges then being tried. It was enough that the court gave an unequivocal instruction that the Commonwealth had not shown appellant's connection with these several offenses and that, consequently, the evidence of such crimes was irrelevant and could not be considered by the jury. It cannot be said, therefore, that appellant was prejudiced by the Commonwealth's failure to prove all the charges which had been made against appellant.

 The final argument to be discussed pertains to the sentence imposed by the court.[6] "The imposition of a sentence is vested in the discretion of the trial court, and [it] will not be disturbed absent a manifest abuse of that discretion." *Commonwealth v. Plank,* 498 Pa. 144, 145, 445 A.2d 491, 492 (1982). Accord: *Commonwealth v. Russell,* 313 Pa.Super. 534, 544, 460 A.2d 316, 322 (1983). "[I]f the sentence imposed is within statutory limits, there is no abuse of discretion unless the sentence is manifestly exces-

6. Appellant's arguments that hearsay evidence was improperly introduced during his preliminary hearing; that the Commonwealth provided Bill of Particulars was inadequate; that evidence of drug transactions between appellant and a Commonwealth witness were inadmissible because dates were not specific; and that the trial court erred in denying several requested points for charge are lacking in merit. They have been adequately discussed in the opinion of the trial court.

sive so as to inflict too severe a punishment." *Commonwealth v. Gaus*, 300 Pa.Super. 372, 377, 446 A.2d 661, 664 (1982). The record must indicate, however, that the sentencing court was cognizant of and considered the standards set forth in the Sentencing Code,[7] and the reasons for imposing a particular sentence must be articulated. *Id.* In the instant case, the sentencing court was also required to give consideration to sentencing guidelines.[8] Finally, for purposes of directing restitution, the court was required to determine on the record (1) the amount of loss suffered; (2) that the loss was caused by the defendant; (3) that the award did not exceed the defendant's ability to pay; and (4) the method of payment best suited to the particular circumstances. *Commonwealth v. Walton*, 326 Pa.Super. 492, 494, 474 A.2d 348, 349 (1984). Where, as here, a fine was imposed, the record must also disclose (1) the convict's ability to pay; (2) that the imposition of a fine will not preclude payment of restitution; and (3) the method of payment pertaining to the imposition of a fine. *Commonwealth v. Mead*, 300 Pa.Super. 510, 514, 446 A.2d 971, 973 (1982); *Commonwealth v. Reardon*, 297 Pa.Super. 193, 199, 443 A.2d 792, 795 (1981); 42 Pa.C.S. § 9726.

 The court properly concluded that appellant could not be sentenced for both conspiracy and corrupt organizations. Both are inchoate offenses. See: 18 Pa.C.S. § 906. The court did impose consecutive sentences of not less than 3½ nor more than seven years for each of the 7 convictions for theft by receiving stolen property, a consecutive sentence of not less than ten nor more than twenty years for a second offense of possessing a controlled substance with intent to deliver, and a consecutive sentence of not less than ten nor more than twenty years for a corrupt organization. In addition to total incarceration for not less than 44½ nor more than 89 years, the sentencing court directed appellant

7. 42 Pa.C.S. § 9701 et seq.
8. 204 Pa.Code § 303.1 et seq.

to pay fines in the total amount of $145,000.00 and make restitution in the amount of $100,000.00, to be pro-rated among all victims.[9]

 The sentences of imprisonment imposed by the court were consistent with the maximum sentences authorized by law. The reasons for the sentences, as given by the court, covered more than five pages of the record and included the court's conclusion that appellant was the "principal architect and ring leader" of a criminal enterprise which had adversely affected the lives of many people in Delaware County. The total sentence, although severe, was not an abuse of discretion under the circumstances presented to the court.

 The sentencing court erred, however, when it imposed a fine which precluded restitution to the victims of appellant's offenses. The court conceded that the losses caused by appellant's criminal conduct exceeded the restitution which appellant was ordered to make. It stated that restitution for all such losses would not be ordered because the evidence did not establish that appellant had an ability to make total restitution. The evidence, although vague, demonstrated appellant's apparent ability to make partial restitution but not total restitution. Under these circumstances, the imposition of fines of $145,000.00 cannot be justified. 42 Pa.C.S. § 9726(c). Rather than merely vacate the fine, we have determined that it would be preferable to remand for resentencing. In this manner the sentencing court will be able to receive additional evidence to assist it in determining the amount of restitution which appellant can reasonably be expected to make.

The judgments of sentence are vacated, and the proceedings are remanded for resentencing consistent with the foregoing opinion. Jurisdiction is not retained.

9. The total loss to all victims, according to testimony produced during trial, was $726,000.00.