614 A.2d 1155

**COMMONWEALTH of Pennsylvania**

v.

**Steven A. BESCH, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 3, 1992.

Filed Aug. 13, 1992.

Reargument Denied Oct. 23, 1992.

Michael S. Gingerich, Lewistown, for appellant.

Mary B. Seiverling, Deputy Atty. Gen., Harrisburg, for Com., appellee.

Before ROWLEY, President Judge, and FORD ELLIOTT and BROSKY, JJ.

ROWLEY, President Judge:

In this appeal from the judgment of sentence entered September 12, 1990, in the Court of Common Pleas of Mifflin County, appellant Steven A. Besch raises the following issues: (1) whether the trial court erroneously expanded the definition of the term "enterprise" as used in the Corrupt Organizations Act [1] by applying it beyond the scope of legitimate business; (2) whether separate sentences on the corrupt organizations offenses and the underlying drug offenses violates the double jeopardy clause; (3) whether convictions on two conspiracy charges violates 18 Pa.C.S. § 903(c) as well as the double jeopardy clause because there was only one conspiracy with multiple objectives; (4) whether the trial court used an incorrect offense gravity score when determining the sentences for the four counts of delivery of a controlled substance and the count of conspiracy to deliver a controlled substance; (5) whether the trial court abused its discretion in imposing disproportionately lenient sentences on appellant's codefendants; and (6) whether the trial court relied on erroneous information when determining the amount of fines to impose. After considering the parties' arguments, we affirm the judgment of sentence except for the portions imposing fines. We vacate the imposition of fines and remand for a hearing on

1. 18 Pa.C.S. § 911.

appellant's ability to pay the fines imposed upon him, and either resentencing or reinstatement of the original fines imposed.

Appellant was arrested after an investigation revealed his involvement in extensive drug-related activities. After a jury trial, he was convicted of the following: Count 1—violation of the Corrupt Organizations Act; Count 2—conspiracy to violate the Corrupt Organizations Act; Count 3—conspiracy to deliver a controlled substance (cocaine); Counts 4–7—delivery of a controlled substance (cocaine); Count 8—possession with intent to deliver a controlled substance (cocaine); and Count 9—possession of a controlled substance (LSD). Appellant filed timely post-trial motions on May 28, 1990.[2] On September 11, 1990, the trial court imposed the following sentence:

**Count 1**—$10,000 fine plus costs and imprisonment of 3–20 years.

**Count 2**—$10,000 fine and imprisonment of 1 ½–3 years, consecutive to Count 1.

**Count 3**—$10,000 fine and imprisonment of 3 ½–10 years, consecutive to Count 2.

**Count 4**—$10,000 fine and imprisonment of 2 ½–10 years, concurrent to Counts 1–3.

**Count 5**—$10,000 fine and imprisonment of 2 ½–10 years, consecutive to Count 4, concurrent to Counts 1–3.

**Count 6**—$10,000 fine and imprisonment of 2 ½–10 years consecutive to Count 5, concurrent to Counts 1–3.

**Count 7**—$10,000 fine and imprisonment of 2 ½–10 years, concurrent to Counts 1–6.

**Count 8**—$10,000 fine and imprisonment of 2 ½–10 years, concurrent to Counts 1–7.

**Count 9**—$5,000 fine.

After sentence was imposed, appellant filed a motion to modify, which was denied. Appellant then filed this timely appeal.

Before reaching the merits of appellant's issues, we must determine whether he has waived those issues by failing to

**2.** It appears from the record that the trial court did not dispose of appellant's post-trial motions.

comply with the trial court's directive that he file a statement
of matters complained of on appeal pursuant to Pa.R.A.P.
1925. Pa.R.A.P. 1925(b) provides: "A failure to comply with
such direction may be considered by the appellate court as a
waiver of all objections to the order, ruling or other matter
complained of." Appellant and the Commonwealth both agree
that this provision is discretionary. As the Supreme Court
explained in *Commonwealth v. Silver,* 499 Pa. 228, 452 A.2d
1328 (1982):

> The statement provided for therein is intended to aid the
> trial court in the preparation of an opinion where the basis
> of an appeal is unclear after post-verdict motions have been
> disposed of. The waiver provision of the Rule is properly
> invoked only where failure to file a statement or omission
> from a statement of issues raised on appeal defeats effective
> appellate review.

*Id.,* 499 Pa. at 238, 452 A.2d at 1333. Because of the nature of
the issues appellant raises in this appeal, we conclude that our
ability to effectively review this case has not been compro-
mised. We will therefore address the merits of appellant's
issues.

█ Appellant first argues that the Commonwealth failed to
establish that he violated the Corrupt Organizations Act in
that the Commonwealth failed to prove that he was engaged in
an "enterprise" within the meaning of the statute. He argues
that the purpose of the statute in question is to protect
legitimate business from infiltration by criminal elements.
Appellant concedes that his position was rejected by this
Court in *Commonwealth v. Yacoubian,* 339 Pa.Super. 413, 489
A.2d 228 (1985). Nonetheless, he argues that *Yacoubian* was
wrongly decided.

In *Yacoubian,* this Court held "that the term 'enterprise' is
unrestricted and sufficiently broad to include both legitimate
and illegitimate enterprises.... Neither the preamble nor the
express language of the statute prevents its proscription from
reaching enterprises organized and existing for illegal pur-
poses." *Id.,* 339 Pa.Superior Ct. at 420, 489 A.2d at 231. On

the basis of this controlling precedent, we conclude that appellant was properly convicted under the corrupt organizations statute.

In his next issue, appellant contends that separate sentences for both the corrupt organizations offenses and for the predicate acts underlying the corrupt organizations offenses constitutes a double jeopardy violation. Appellant argues that he engaged in only one offense because "[e]ach element of the Drug offense must be proved both for the Drug Act offense itself and for the 'pattern of racketeering activity' element of the Corrupt Organizations offenses." Appellant's Brief at 12. This type of *Blockburger* [3] analysis is not helpful where, as here, the legislature has enacted a criminal statute which imposes liability for engaging in a pattern of specified criminal acts.

Appellant was convicted for violating the corrupt organizations statute, which provides in relevant part that "it shall be unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 Pa.C.S. § 911(b)(3). A pattern of racketeering activity is defined as "a course of conduct requiring two or more acts of racketeering activity one of which occurred after the effective date of this section." *Id.* § 911(h)(4). Acts of racketeering activity for purposes of this statute are enumerated in section 911(h)(1). In the present case, the Commonwealth set forth the following predicate acts in the complaint filed against appellant: conspiracy to commit violations of the Controlled Substance, Drug, Device and Cosmetic Act (Count 3), multiple acts of delivery of a controlled substance (Counts 4–7), possession with intent to deliver a controlled substance (Count 8), possession of a controlled substance (Count 9), conspiracy to commit theft and to receive stolen property, and receiving stolen property. Appellant was not charged with the last two predicate acts. He was, however, charged with and convicted of the other predicate acts. He was also sentenced on all counts, as noted above. Appel-

---

**3.** *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

lant now contends that sentencing on both the drug charges and the corrupt organizations charges violates double jeopardy.

 Appellant's argument implicates the multiple punishment aspect of the double jeopardy clause. In this context, [t]he double jeopardy clause serves principally as a restraint on courts and prosecutors—it does *not* restrain the legislature in its role in defining crimes and fixing penalties. The intent of the double jeopardy provisions is to prevent courts from imposing, and prosecutors from seeking, more than one punishment under a particular legislative enactment, and, where consecutive sentences are imposed at a single trial, to prevent the court from exceeding its legislative authorization by imposing multiple punishments for the same offense. ... [T]he *Blockburger* test is merely a tool of statutory construction whereby the courts can determine whether, in the absence of legislative expression to the contrary, the legislature intended to prescribe multiple punishments under two separate statutory provisions for what might arguably be considered the 'same offense.'

*Commonwealth v. Bostic*, 500 Pa. 345, 350–51, 456 A.2d 1320, 1323 (1983) (citations and footnote omitted) (emphasis in original). Under the circumstances of the present case, we conclude that separate sentencing does not violate the double jeopardy clause.

First, appellant was not twice punished for the same offense. On the drug charges, he was sentenced for engaging in activity which violates the Controlled Substance, Drug, Device and Cosmetic Act. On the corrupt organizations charges, he was sentenced for engaging in a pattern of racketeering activity. It is true that the pattern of racketeering activity included the drug offenses. However, it also included non-drug-related offenses, namely, receiving stolen property and conspiracy to commit theft and to receive stolen property. Furthermore, appellant was not sentenced for the drug-related offenses when he was sentenced for corrupt organizations. Rather, he was sentenced for engaging in a pattern of criminal activity as evidenced by those drug-related offenses. The

pattern of racketeering activity for which appellant was sentenced is simply not the same offense as the individual instances of drug-related activity.

Moreover, we cannot conclude that the legislature intended to preclude sentencing on the predicate acts when it enacted the corrupt organizations statute. In enacting the statute, the legislature determined that "in order to successfully resist and eliminate [the infiltration and corruption of legitimate business by organized crime, and the resulting danger to the economic and general welfare of the Commonwealth], it is necessary to provide new remedies and procedures." 18 Pa.C.S. § 911(a). In setting forth these new remedies and procedures, it would be unreasonable to assume that the legislature intended that offenders would be immune from punishment for the numerous predicate acts upon which a conviction of corrupt organizations can be based. *See id.* § 911(h). For example, one of the acts which can form a pattern of racketeering activity is "any act which is indictable under ... Chapter 25 (relating to criminal homicide)." *Id.* § 911(h)(1)(i). Accordingly, if a person who is employed by or associated with any enterprise, conducts or participates in the conduct of the enterprise's affairs through a pattern of racketeering activity, including first-degree murder and one other predicate act, that person can be charged with a violation of the corrupt organizations statute. However, if by prosecuting that person for corrupt organizations, the Commonwealth would lose the opportunity to seek a conviction for the first-degree murder offense, there would be no incentive for the Commonwealth to charge under the corrupt organizations statute. As a result, the corrupt organizations statute would have no deterrent effect in this situation.

Similarly, if a defendant could not be sentenced for violating both the corrupt organizations statute and the predicate acts, a defendant who is convicted of violating the corrupt organizations statute on the basis of predicate acts involving first-degree murder would be sentenced the same as a similarly-situated defendant whose predicate acts involve gambling. Our legislature could not have intended such a result. For

these reasons, we conclude that appellant was properly sentenced on the drug charges and the corrupt organizations charges.

■ Next, appellant raises two issues with respect to his convictions for conspiracy to deliver a controlled substance and conspiracy to violate the corrupt organizations statute. For the reasons just discussed, we reject appellant's assertion that sentencing on both counts violates the double jeopardy prohibition against multiple punishments.

In a similar argument, appellant contends that pursuant to 18 Pa.C.S. § 903(c), he may only be convicted on one conspiracy charge because his activities constituted one continuous conspiratorial relationship with multiple objectives. Section 903(c) provides: "If a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship." We conclude that this section does not bar multiple conspiracy violations under the circumstances of the present case. Appellant was not convicted of two counts of conspiracy under section 903. Rather, he was convicted of one count of conspiracy under section 903 and one count of conspiracy under the corrupt organizations statute, specifically, section 911(b)(4). If the legislature had intended that conspiracy under section 911(b)(4) would be identical to conspiracy under section 903, there would have been no need to enact section 911(b)(4). Accordingly, we conclude that section 903(c) does not apply to the present case.

■ In his appeal, appellant also raises three sentencing issues.[4] First, he argues that the trial court used an incorrect offense gravity score in determining his sentences for delivery of a controlled substance. Specifically, appellant contends that the trial court should have used the offense gravity score of "F," which is applied when the amount of cocaine is less

_____

4. We note that appellant has complied with Pa.R.A.P. 2119(f) by providing a statement of reasons for allowance of appeal regarding the discretionary aspects of his sentence. Because his assertions raise a substantial question that the sentence imposed is inappropriate, we will address the merits of his assertions.

than two grams, rather than "E," which is applied when the amount of cocaine is two to 100 grams. He also argues that the trial court used an erroneous offense gravity score with respect to the conspiracy count because the jury could have found that he conspired with only one of the co-conspirators and "it must be assumed for purposes of sentencing that there was a finding of conspiracy with only one [co-conspirator]. . . ." Appellant's Brief at 18.

Appellant was convicted of four counts of delivery of a controlled substance. Each count alleged deliveries to one of four different persons. Each of those four persons testified about receiving drugs from appellant. Appellant argues that "[t]he way the Information was drawn, a finding of guilt as to only one of the multiple deliveries alleged to the named individual was sufficient for a finding of guilt." *Id.* at 17. Accordingly, he asserts, he should have been sentenced for only the "minimum single deliveries" to which each witness testified.

We have reviewed the record and conclude that all of the counts charged are supported by adequate testimony from which the trial court could find that amounts greater than two grams had been distributed by appellant to each witness. For example, Charles Miller testified that "a couple hundred" times, he bought "anywhere from grams to eight balls"[5] of cocaine from appellant. Although no specific aggregate amount was testified to, each witness clearly testified to receiving amounts greater than two grams from appellant. We will not speculate that the jury only found sufficient evidence of one delivery for each count, nor will we speculate that the jury found sufficient evidence of a conspiracy with only one co-conspirator. Accordingly, appellant is not entitled to relief as to this issue.

Appellant also argues that he received a disproportionately harsh sentence as compared to his codefendants. It is true that when a trial court imposes disproportionate sentences on codefendants, the court should explain its reasons for doing so on the record. *Commonwealth v. Sinwell,* 311 Pa.Super. 419,

5. An "eight ball" is one-eighth of an ounce of cocaine.

457 A.2d 957 (1983). In the present case, however, appellant's argument is meritless.

Appellant contends that his sentence was unduly disproportionate to Douglas G. Woodward, Kenneth Z. Norton, and Jeffrey L. Holland. These three men were participants in the criminal activities for which appellant was convicted. Although appellant characterizes these men as his codefendants, the record is clear that they were not. Rather, Norton and Woodward cooperated with the government and testified against appellant. In addition, Woodward pled guilty to one count of delivery of a controlled substance and one count of conspiracy to deliver a controlled substance, while Norton pled guilty to one count of conspiracy to deliver a controlled substance. As to Holland, he did not testify against appellant and the record reveals no information concerning him. However, appellant contends that Holland pled guilty to one count of conspiracy to deliver a controlled substance. Appellant, on the other hand, was convicted on nine counts of criminal charges. The differences in the sentences is easily explained by the differences in the number and seriousness of the crimes of which each was convicted.

Furthermore, as appellant recognizes, it would be unrealistic to expect the trial judge to explain his reasons for sentencing appellant more harshly where the other three men were sentenced approximately a year after appellant was sentenced. Nonetheless, appellant requests that we vacate his sentences because they are unduly disproportionate to those received by other participants in the criminal activities at issue. Under these circumstances, we have no basis upon which to conclude that the trial court imposed a disproportionately harsh sentence on appellant.

Appellant's final sentencing issue involves the basis for the fines imposed upon him. Appellant argues that the trial judge relied on erroneous information that appellant is receiving $900 a month in social security benefits. As evidenced by a letter from the Social Security Administration, which was attached to appellant's motion to modify sentence, those payments have been stopped due to appellant's conviction and

imprisonment. The Commonwealth agrees that a remand is appropriate so that the trial judge can determine whether appellant is able to pay the fines imposed upon him. However, the Commonwealth notes, and we agree, that the trial court only relied on erroneous information because that was the information supplied to him at the sentencing hearing. The transcript reveals that the trial judge asked appellant's counsel if he had read the pre-sentence report, which listed appellant's social security payments as assets. Appellant's counsel stated that he and appellant had reviewed the report and that it was accurate. Subsequently, the following exchange occurred:

> THE COURT: Alright. We, of course, have read the pre-sentence report and we've considered such. We note in the final section that Mr. Besch was getting $900.00 (Nine Hundred Dollars) a month social security. Still getting that?
>
> DEFENDANT BESCH: No.
>
> THE COURT: Where is it? Where is it going?
>
> DEFENDANT BESCH: I shut it off.
>
> THE COURT: You shut it off.
>
> DEFENDANT BESCH: Yeah.
>
> THE COURT: You better turn it back on.

Sentencing Transcript, 9/11/90, at 5. The trial judge then imposed a fine in an amount sufficient to exhaust the social security payments which he thought appellant would be receiving during his term of imprisonment.

After reviewing the sentencing transcript, we cannot say that the trial court erroneously relied on the fact that appellant was receiving social security payments as this was the information before him. Furthermore, contrary to his assertion, appellant did not try to explain to the judge that he did not stop his payments, but rather, that they were stopped by the Social Security Administration. Nonetheless, because appellant raised the issue in his motion to modify sentence, and the trial court could have corrected the sentence at that time, we will vacate the judgment of sentence as to the fines imposed and remand so that the trial judge can determine

appellant's ability to pay those fines. After the hearing, the trial judge can resentence appellant or reinstate the original fines imposed.

For the above reasons, we affirm appellant's convictions and sentences with the exception that we must vacate that portion of the sentences that impose a fine and remand for a hearing to determine appellant's ability to pay the fines imposed upon him.

The judgment of sentence is affirmed except for the portions imposing fines. The imposition of fines is vacated and the case is remanded for a hearing and either resentencing as to fines or reinstatement of the original fines imposed. Jurisdiction is relinquished.