639 A.2d 462

**COMMONWEALTH of Pennsylvania**

v.

**Rickie Jay GADDIS, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 9, 1993.

Filed March 22, 1994.

524

526

528

David J. Kaltenbaugh, Asst. Public Defender, Johnstown, for appellant.

Christian A. Fisanick, Asst. Dist. Atty., Barnesboro, for Com., appellee.

Before: TAMILIA, HUDOCK and CERCONE, JJ.

TAMILIA, Judge.

These consolidated appeals are taken from the judgments of sentence imposed on February 9, 1993. Appellant was found guilty in two separate trials of more than 150 counts of aggravated assault, 18 Pa.C.S. § 2702; recklessly endangering another person, § 2705; terroristic threats, § 2706; endangering the welfare of children, § 4304; corruption of minors, § 6301; false imprisonment, § 2903; simple assault, § 2701; prohibited offensive weapons, § 908; rape, § 3121; statutory rape, § 3122; involuntary deviate sexual intercourse, § 3123; aggravated indecent assault, § 3125; indecent exposure, § 3127; incest, § 4302; and criminal conspiracy, § 903. These charges arose from the horrific sexual, physical and emotional abuse and neglect by appellant, Rickie Jay Gaddis, of his minor children. Following the denial of post-trial motions, appellant was sentenced to an aggregate term of 235 to 470 years' imprisonment, fines in the amount of $1,710,000 and costs in the amount of $210,910.

On appeal, appellant first argues the trial court erred in refusing to permit him to attack the credibility of D.G., appellant's minor daughter and the primary victim of his sexual assaults, by questioning her about alleged false accusations made against third parties that they had sexually assaulted her. Appellant alleged in his written offer that D.G. falsely accused a male gym teacher of spying on her in the girls' locker room in the fall of 1990; falsely accused therapists and others of sexually molesting her sometime between November, 1991 and January, 1992; falsely accused another individual of raping her on or about July 5, 1992; and that she falsely accused three other individuals of sexually molesting

her several years earlier. The trial court then conducted an *in camera* hearing on this issue. At the conclusion of the hearing, the trial court determined that, based on the insufficiency of appellant's proffer and the lack of relevance of the allegations in the proffer to the charges against appellant, appellant would not be permitted to attack the victim's credibility on the basis of her alleged false accusations against third parties of sexual assaults. *See* N.T., 9/21/92, pp. 81–92.

This claim presents a challenge to our Rape Shield Law, which provides:

### § 3104. Evidence of victim's sexual conduct

(a) **General rule.**—Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

(b) **Evidentiary proceedings.**—A defendant who proposes to offer evidence of the alleged victim's past sexual conduct pursuant to subsection (a) shall file a written motion and offer of proof at the time of trial. If, at the time of trial, the court determines that the motion and offer of proof are sufficient on their faces, the court shall order an in camera hearing and shall make findings on the record as to the relevance and admissibility of the proposed evidence pursuant to the standards set forth in subsection (a).

18 Pa.C.S. § 3104.

■ As the clear language of the Rape Shield Law indicates, the statute "is a bar to admission of testimony of prior sexual conduct involving a victim, whether it is consensual or the result of nonconsensual or assaultive behavior, unless it has probative value which is exculpatory to the defendant." *Commonwealth v. Johnson*, 389 Pa.Super. 184, 195–196, 566 A.2d 1197, 1202 (1989), *alloc. granted*, 525 Pa. 643, 581 A.2d

569 (1990). *See Commonwealth v. Smith*, 410 Pa.Super. 363, 599 A.2d 1340 (1991); *Commonwealth v. Kimble*, 424 Pa.Super. 499, 623 A.2d 336 (1993).

> To that end, limited exceptions to the broad exclusion of the rape shield law have arisen to demonstrate the rape shield law "will bow to a defendant's right to cross-examine when a specific proffer demonstrates that the proposed inquiry is intended to elicit relevant evidence, which is more probative than prejudicial, and which is not cumulative of other evidence available without encroaching upon Rape Shield law protections."

*Smith, supra* at 368–369, 599 A.2d 1340, *quoting Commonwealth v. Nieves*, 399 Pa.Super. 277, 288, 582 A.2d 341, 347 (1990).

Although this Court also has held that the Rape Shield Law may not be used to exclude relevant evidence attacking credibility or showing a witness' bias, *Commonwealth v. Black*, 337 Pa.Super. 548, 487 A.2d 396 (1985), subsequent decisions have applied the holding in *Black* quite narrowly, and "only where the victim's credibility was allegedly affected by bias against or hostility toward the defendant, or the victim had a motive to seek retribution." *Commonwealth v. Boyles*, 407 Pa.Super. 343, 354, 595 A.2d 1180, 1186 (1991).

From our review, we find appellant has failed to surmount any of the obstacles necessary to skirt the prohibitions of the Rape Shield Law. Clearly, none of the allegations had probative value exculpatory to appellant, because in this case, unlike most sexual assault cases, the victim's testimony was corroborated by the testimony of three eyewitnesses, namely the victim's mother, brother and sister. In addition, appellant's proffer lacked sufficient specificity, especially with regard to the allegation of the victim's report of sexual assaults by three men several years earlier. Moreover, these allegations of false accusations by the victim against third parties were not relevant to attack her credibility because, as lodged against third parties, they did not establish that they were

motivated by any bias or hostility toward appellant. *Boyles, supra.* Finally, as the trial court stated:

Any probative value found would be deminimus [sic] compared to the prejudice which would ensue by leaving the speculation as to the truth of the alleged incidents to the jury. In essence, there would of necessity be several trials within the trial *sub judice* to establish whether in fact the alleged incidents were true or false. Not only was there no connection with the Defendant on any of the alleged incidents, but no prior truth-determining process established the veracity of the asserted allegations. Prejudice would be implicit in any allowance of the evidence into this case as there was no connection, nor were the allegations established to be truth in fact.

(Slip Op., Long, P.J., 4/26/93 (Slip Op. I), pp. 4–5.) For these reasons, we find this claim without merit. *See Commonwealth v. Coia*, 342 Pa.Super. 358, 492 A.2d 1159 (1985).

Appellant next argues the trial court erred during the first trial by permitting the prosecution to introduce evidence of other criminal conduct by appellant. Specifically, appellant challenges the admissibility of the following testimony:

[M.G.] is the victim's sister, and the daughter of the Defendant. She testified that her father established a set of rules to govern the behavior and whereabouts of the children. *T. T. 9/23/92, [M.G.], at 17.* One of the rules was that the children were not permitted to travel along Napoleon Street beyond the Ideal Market. *Id.* Immediately beyond this vicinity was located the Women's Help Center, a facility to render assistance to abuse victims.

[M.G.'s] testimony indicated that her brother [R.G.], her sister [S.R.], and herself attempted to flee the Defendant's home and seek assistance at the Women's Help Center. *Id.* at 20. This was done in an effort to find refuge because of the ongoing abuse and injuries inflicted on their sister [D.G.], the victim. *Id.* at 23. [M.G.] testified that immediately prior to the three reaching the Women's Help Center, the Defendant intercepted them. They were taken back to the family apartment, tied up, and beaten with a large

wooden object. *Id.* at 23–26. The children finally confessed to the Defendant during the beating that they were attempting to reach the Women's Help Center. *Id.* at 26. After receipt of the information, the Defendant continued to beat all three children. *Id.* at 27.

(Slip Op. I at 8–9.)

 Evidence of separate, unrelated crimes is generally inadmissible to prove the crime for which the defendant is on trial. Where evidence is relevant, however, the mere fact that testimony of another crime may be prejudicial will not prevent its introduction into evidence. *Commonwealth v. John*, 408 Pa.Super. 234, 596 A.2d 834 (1991). Evidence of other crimes can be shown when it tends to prove motive, intent, absence of mistake or accident, identity or common scheme, plan or design. *Commonwealth v. Grekis*, 411 Pa.Super. 513, 601 A.2d 1284 (1992). A sixth exception is recognized where the uncharged crime was committed "to conceal the commission of the crime on trial or to escape its consequences." *Commonwealth v. Turner*, 303 Pa.Super. 442, 451, 450 A.2d 9, 13 (1982).

 We agree with the trial court's finding that

[M.G.'s] testimony reasonably established an inference, if believed by the jury, that the Defendant prohibited the children from navigating beyond the Ideal Market on Napoleon Street to prevent them from interacting with the Women's Help Center. A further inference can be reasonably established through [M.G.'s] testimony that the Defendant prevented the children from frequenting the vicinity of the Women's Help Center because of his consciousness of guilt and knowledge that he would be subject to criminal prosecution if any information were given to the personnel at the Women's Help Center. [M.G.] and the other two children were attempting to flee as a result of the abuse toward [D.G.], and in an effort to assist her, when the Defendant intercepted and retaliated against them. The testimony of [M.G.] that the Defendant beat her and her siblings on this occasion was relevant circumstantial evi-

dence of the Defendant's guilt. It was not prejudicial nor inflammatory, but rather germane to the issues at trial regarding the abuse suffered by the victim [D.G.], and the family's response to it.

(Slip Op. I at 11–12.)

It would be difficult to conceive of a trial at which the prosecution's evidence was not prejudicial to the defendant. *Commonwealth v. Moore*, 389 Pa.Super. 473, 567 A.2d 701 (1989). "The difficulty arises when the evidence is so prejudicial that it sweeps the [fact finder] beyond a rational consideration of guilt or innocence of the crime on trial." *Commonwealth v. Moore*, 389 Pa.Super. at 483, 567 A.2d at 706.

*Commonwealth v. Davis*, 394 Pa.Super. 591, 606, 576 A.2d 1005, 1013 (1990). Given the extent of the heinous charges against appellant, it is undoubted that the evidence against him was prejudicial. Our review of the record, however, discloses this evidence was relevant, and its probative value outweighed its prejudicial effect. Therefore, we find no error in the admission of M.G.'s testimony.

■ Appellant next argues the trial court erred in permitting, in both trials, over objection, a police officer to testify about appellant's physical appearance on the day of his arrest. Detective Richard Rok of the Johnstown Police Department testified that he first encountered appellant on the morning of November 1, 1991, when appellant arrived to place a missing juvenile report for the victim, D.G. Detective Rok described appellant as a big, bulky individual with a large Fu Manchu-type moustache and other unusual features. (Slip Op. at 13.) However, as the trial court noted:

[Appellant's] appearance changed drastically from the time Detective Rok initially observed him to the time of the trial. There was a substantial alteration in [appellant's] hairstyle and other features such as his weight. He had shed approximately thirty to forty pounds and had trimmed his Fu Manchu moustache. He also wore his hair significantly different by styling it more conventionally. Because of this

alteration in appearance, Detective Rok's description and identification of [appellant] became relevant.

(Slip Op. I at 14–15; Slip Op., Long, P.J., 4/26/93 (Slip Op. II), pp. 4–5.)

We agree with the trial court that Detective Rok's description of appellant was relevant, especially with regard to the charges of terroristic threats and simple assault. Both of these crimes involve the instilling of fear or menace in their victims, and appellant's appearance at the time of the commission of the offenses charged was "relevant circumstantial evidence of his state of mind and intent to inflict fear upon the victim, and/or whether he acted in reckless disregard of the possibility of inflicting fear upon the victim." (Slip Op. I at 15; Slip Op. II at 5.) *See also* 18 Pa.C.S. §§ 2701, 2706.

As we find this evidence relevant, probative and not unduly prejudicial to appellant, this claim is without merit.

■ Appellant's fourth claim is that the trial court erred at the first trial in allowing the Commonwealth to cross-examine a defense witness about appellant's appearance shortly before his arrest. Kimberly Ann Long, an officer with the Cambria County Juvenile Probation Office, testified for the defense about an interview she conducted with appellant and the victim on October 28, 1991. On cross-examination, the district attorney asked the witness to describe appellant's appearance at the time of the interview. Appellant objected, contending the question was beyond the scope of the direct examination and was not relevant. The Commonwealth responded that the witness' recollection was at issue and was a proper subject of cross-examination.

We need not address the issue of whether appellant's appearance was relevant, as that claim was resolved, *supra*. As to whether the testimony was beyond the scope of cross-examination, our Supreme Court recently stated:

Cross-examination is a vital and fundamental part of a fair trial, providing the principal means by which the believability of a witness and the truth of his testimony are tested. In criminal cases, this right extends beyond the subjects

testified to on direct examination, and includes the right to examine the witness on any facts tending to refute inferences or deductions arising from matters testified to on direct examination. *Commonwealth v. Green*, 525 Pa. 424, 454, 581 A.2d 544, 559 (1990). Subject always to the discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness's story to test the witness's memory and perceptions, but the cross-examiner had traditionally been allowed to impeach or discredit the witness's story. *Commonwealth v. Robinson*, 507 Pa. 522, 491 A.2d 107 (1985).

*Commonwealth v. Spiewak*, 533 Pa. 1, 10, 617 A.2d 696, 700 (1992).

From our examination of the trial transcript, we find no abuse of the trial court's discretion in allowing the Commonwealth to question the witness about appellant's appearance. We find this question was within the scope of the witness' direct examination, and therefore this claim is also without merit.

The fifth claim presented by appellant is that the trial court abused its discretion in imposing a manifestly excessive sentence totalling 235 to 470 years' imprisonment.

The scope of our review in challenges to the discretionary aspects of sentencing is well settled. Sentencing is a matter within the sound discretion of the sentencing court, and will not be disturbed absent a manifest abuse of that discretion. *Commonwealth v. Minott*, 395 Pa.Super. 552, 577 A.2d 928 (1990). To constitute an abuse of discretion, the sentence imposed must either exceed the statutory limits or be manifestly excessive. *Id.* As an initial matter, however, a challenge to the discretionary aspects of sentencing requires appellant to set forth in his brief a separate, concise statement of the reasons relied upon for allowance of appeal. Pa.R.A.P. 2119(f). In addition, appellant must raise a substantial question as to the appropriateness of the sentence, which would permit us to accept the appeal as to this issue. *Common-*

*wealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987). The determination of whether a particular issue constitutes a substantial question must be evaluated on a case by case basis. *Commonwealth v. Losch*, 369 Pa.Super. 192, 535 A.2d 115 (1987). Generally, however, in order to establish a substantial question, appellant must show actions by the sentencing court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process. *Commonwealth v. McLaughlin*, 393 Pa.Super. 277, 574 A.2d 610 (1990). We find appellant has not presented a substantial question for our review.

 Appellant concedes that the sentence imposed neither exceeds the statutory limits nor violates the sentencing guidelines (Brief of Appellant at 34).[1] Instead, appellant asserts that a sentence imposing a minimum term of 235 years for crimes in which a life sentence is not authorized, is *per se* manifestly excessive. We disagree, and find this case controlled by *Commonwealth v. Jones*, 418 Pa.Super. 93, 613 A.2d 587 (1992).

In *Jones, supra,* the defendant pled guilty to 61 counts arising from his sexual abuse of 14 boys, and ultimately was sentenced to a term of imprisonment totalling 50 to 100 years. The *Jones* Court found that the sentence imposed, while substantial, was significantly less than the statutory limits and could not be termed a life sentence. "Looking at the Sentencing Code as a whole, the sentence imposed by the lower court was within its mandates and consistent with its statutory provisions. On this basis, we conclude that the sentence imposed was not manifestly excessive." *Id.* at 108, 613 A.2d at 594.

Considering appellant was found guilty of more than 150 counts, had the trial court sentenced appellant at the low end of the mitigated range of the sentencing guidelines on each count, it is extremely unlikely appellant would live long

1. A recent panel of this Court held that a claim of excessiveness "does not constitute a substantial question when the sentence in question is within the statutory limits." *Commonwealth v. Martin*, 416 Pa.Super. 507, 519, 611 A.2d 731, 737 (1992) (citations omitted).

enough to serve his entire minimum sentence. In essence, appellant is challenging the court's imposition of consecutive rather than concurrent sentences. Such a challenge does not present a substantial question.

■ From our sedulous review of the extensive record in this case, we find the court had before it at sentencing all testimony in the case, arguments of counsel, appellant's record and a presentence investigation (N.T., 2/9/93; Slip Op., Long, P.J., 4/26/93 (Slip Op. III), pp. 2–4). Such information constitutes the relevant and material information required to impose a reasonable sentence. *Commonwealth v. Devers,* 519 Pa. 88, 546 A.2d 12 (1988).

We find appellant has not shown actions by the sentencing court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process, and therefore, he has not presented a substantial question for review. Accordingly, this Court will not review further the length of appellant's sentence.

As a caveat, however, we should note that a revisitation of the policy aspects of sentencing, beginning with mandatory sentences and including consecutive sentences or sentences for habitual criminals, also requires consideration of the fact these policy choices are rapidly filling all available prison space, requiring enormous expenditures for new prisons which exceed the taxing capacity of government to provide. Additionally, 30 or 40 years from now our prisons will be filled with elderly persons suffering myriad health problems which will place enormous burdens on our children and grandchildren to support. As we stated in *Commonwealth v. Parrish,* 340 Pa.Super. 528, 490 A.2d 905 (1985), *appeal quashed for lack of jurisdiction,* 515 Pa. 297, 528 A.2d 151 (1987): "Although none of the individual sentences imposed here are in excess of the statutory maximum, we find each of the individual sentences and hence, the cumulative sentence, to be manifestly excessive so as to inflict too severe a punishment." *Id.* at 532, 490 A.2d at 907. Since then the Supreme Court in *Tuladziecki, supra,* has held that pursuant to 42 Pa.C.S. § 9781, Appellate review

of sentence, appellant must raise a substantial question concerning propriety of sentence (claim of excessiveness of sentence does not raise substantial question). *Devers, supra,* and *Jones, supra,* allow any sentence to stand which is not illegal as being beyond statutory limits and which is supported by the court's analysis or is justified by a presentence report. Sentences such as imposed here, while legal, raise the question of their overall impact upon society due to the costs which must be borne by future generations when measured against actuarial possibilities and actual potential for danger to the community once the defendant reaches elderly status. This, however, must be addressed by the Legislature rather than this Court. *See* 42 Pa.C.S. § 9781(f).

Appellant's sixth claim is that the trial court abused its discretion in imposing an aggregate fine of $1,710,000, when it knew appellant did not have the financial resources to pay such fines.

▆ Fines are provided for in the Sentencing Code as follows:

(b) **Fine as additional sentence.**—The court may sentence the defendant to pay a fine in addition to another sentence, either involving total or partial confinement or probation, when:

(1) the defendant has derived a pecuniary gain from the crime; or

(2) the court is of the opinion that a fine is specially adapted to deterrence of the crime involved or to the correction of the defendant.

(c) **Exception.**—The court shall not sentence a defendant to pay a fine unless it appears of record that:

(1) the defendant is or will be able to pay the fine; and

(2) the fine will not prevent the defendant from making restitution or reparation to the victim of the crime.

(d) **Financial resources.**—In determining the amount and method of payment of a fine, the court shall take into

account the financial resources of the defendant and the nature of the burden that its payment will impose.

42 Pa.C.S. § 9726.

From our review of the sentencing transcript, we find the court erred in sentencing appellant to pay such an astronomical fine without making inquiry as to his ability to pay. *Commonwealth v. Fusco,* 406 Pa.Super. 351, 594 A.2d 373 (1991); *Commonwealth v. Yacoubian,* 339 Pa.Super. 413, 489 A.2d 228 (1985); *Commonwealth v. Schwartz,* 275 Pa.Super. 112, 418 A.2d 637 (1980).

At sentencing, the court stated:

Mr. Gaddis, I want to explain on the record although I realize you're not a man of money why I imposed such large fines upon you. And the reason for that is it's been brought to my attention that you are in the process of writing a book or trying to get a movie produced concerning these criminal episodes. The purpose of these large fines that were placed which are approximately 2 million dollars in costs and fines against you is to reimburse Cambria County for the costs that have been used as expenditures because of your crimes. I'm further requesting the County Solicitor to take these fines and reduce them to judgments and place them against you in the Prothonotary's Office. It is also part of my sentence that I have incorporated as part of your costs the amount that we have had to expend for the care, psychiatric and otherwise of your children you have abused. I'm going to order the Children and Youth Agency to compile that figure every six months and produce it to the Court and my sentence to you today is that I'm going to keep adding that to your restitution and costs of this case. So just in case you do come into a windfall through a book or movie or whatever, Cambria County is going to have the first shot of recouping the money they have spent and the amount of money used to pay for psychiatric treatment and housing and other treatment we have given your children.

(N.T., 2/9/93, pp. 42–43.)

The sentencing court later stated:

As to the fines levied on [appellant], they were not disproportionate. No monetary benefit should ever be rightfully reaped from a wrong perpetrated by a defendant, and this Court would be remiss to allow otherwise. Although [appellant] currently has no financial means available, the Court adapted the fines as a specific deterrence to the penchant of [appellant]. It was further fashioned to forestall an undeserved windfall to [appellant] for his immoral conduct. It was widespread knowledge the [appellant] was attempting to capitalize on his wrong by his receipt of tenuous preliminary negotiations from various news and publication media. The media inquired into his amenability to sell movie and book rights to the sordid affair.

The thought of any monetary gain to [appellant] for his vicious and repulsive behavior is repugnant to the conscience of this Court, and the interest of justice mandate a directive otherwise. At the time of sentencing there was a substantial likelihood that [appellant] would be able to pay the fines imposed from future proceeds. The fines are therefore more than appropriate under the circumstances of the case. He can not reap benefit to the expense of his family and society.

(Slip Op. III at 405.)

■■■■ While the knowledge of appellant's efforts to capitalize financially on his crimes may have been "widespread", that information has not made its way into the record before us. Therefore, while the imposition of a fine, however harsh, may be appropriate to thwart a defendant's pecuniary gain from, or as a special deterrence to, the crime involved, 42 Pa.C.S. § 9726(b)(1), (2), *supra,* it must be preceded by a determination of the defendant's financial resources and ability to pay. *Id.,* § 9726(c), (d), *supra.*

We also note that the windfall to appellant which the sentencing court sought to prevent has been prohibited by another statute. The Administrative Code specifies that any moneys owing to a person accused or convicted of a crime "with respect to the reenactment of such crime, by way of

movie, book, magazine article, tape recording, phonograph record, radio or television presentation, live entertainment of any kind, or from the expression of the accused or convicted person's thoughts, feelings, opinions or emotions regarding such crime" shall be paid over to the Pennsylvania Crime Victim's Compensation Board to be held in escrow for the victims of the crime. 71 P.S. § 180–7.18.

For the foregoing reasons, we vacate the fine imposed, but in light of the length of the term of imprisonment imposed and affirmed herein, as well as appellant's present indigency, we need not remand for resentencing.

Appellant next contends the sentencing court erred in relying on section 9728(g) of the Sentencing Code in its imposition of certain costs on appellant. 42 Pa.C.S. § 9728(g). The court stated: "The majority of the costs taxable to the case are associated with county and state expenditures for Children and Youth foster and placement care charges. There were also expenditures for psychiatric and psychological assistance for the subject children. The county and state funding for these services is an appropriate governmental agency cost as to that term is set forth in 42 Pa.C.S.A. § 9728(g)." (Slip Op. III at 6.) We disagree.

The Sentencing Code provides, in pertinent part, as follows:

### § 9728. Collection of restitution, reparation, fees, costs, fines and penalties

(a) **General rule.**—All restitution, reparation, fees, costs, fines and penalties shall be collectible in any manner provided by law. However, such restitution, reparation, fees, costs, fines and penalties are part of a criminal action or proceeding and shall not be deemed debts. A sentence or pretrial disposition order for restitution, reparation, fees, costs, fines or penalties shall, together with interest and any additional costs that may accrue, be a judgment in favor of the probation department upon the person or the property of the person sentenced or subject to the pretrial disposition order.

**(b) Procedure.**—The county probation department or other appropriate governmental agency shall, upon sentencing or pretrial disposition, transmit to the prothonotary of the respective county certified copies of all judgments for restitution, reparation, fees, costs, fines and penalties, and it shall be the duty of each prothonotary to enter and docket the same of record in his office and to index the same as judgments are indexed, without requiring the payment of costs as a condition precedent to the entry thereof. The total amount for which the person is liable pursuant to this section may be entered as a judgment upon the person or the property of the person sentenced, regardless of whether the amount has been ordered to be paid in installments.

. . . .

**(g) Costs, etc.**—Any sheriff's costs, filing fees and costs of the county probation department or other appropriate governmental agency shall be borne by the defendant and shall be collected by the county probation department or other appropriate governmental agency along with the total amount of the judgment and remitted to the appropriate agencies at the time of or prior to satisfaction of judgment.

42 Pa.C.S. § 9728. It is a maxim of statutory construction that an Act of Assembly which imposes penal sanctions for violations of its provisions must be strictly construed. 1 Pa.C.S. § 1928; *Commonwealth v. Hill,* 481 Pa. 37, 391 A.2d 1303 (1978). A clear reading of section 9728 indicates that subsections (a) and (b) govern the status of restitution, reparation, fees, costs, fines and penalties imposed as part of sentencing or pretrial disposition, and the manner in which judgment for same may be entered with the prothonotary against a defendant. Restitution, reparation, fees, costs, fines and penalties are not delineated in separate subsections of section 9728, but are all contained in subsection (a). Therefore, we agree with appellant that the separate reference to "costs" in subsection (g) provides for the collection of costs associated with obtaining a money judgment against the defendant, and does not provide for the imposition of the costs of

prosecution itself, as the sentencing court in this case envisioned.

Moreover, we do not find that the imposition of the expenses of Cambria County Children and Youth Services (CYS) on appellant in this case was proper, even under section 9278(a). The statute states: "A sentence ... for restitution, reparation, fees, costs, fines or penalties shall ... *be a judgment in favor of the probation department* upon the person or the property of the person sentenced...." *Id.*, § 9728(a) (emphasis added). Any monies collected from appellant, then, could not satisfy the CYS costs, as only the Cambria County Probation Department would be a judgment holder under section 9728.

▮▮▮ As stated, *supra,* the practical effect of the imposition of substantial fines and/or costs on appellant is negligible, given appellant's penury and lengthy prison term. While CYS may obtain a judgment against appellant in the unlikely event he ever obtains any financial resources, *see* 62 P.S. §§ 1973–1975, the imposition of CYS costs in the amount of $137,500 against appellant under 42 Pa.C.S. § 9728(g) was in error. There is clear statutory authority for imposition of costs for care, support and maintenance of children who become wards of court or placed in the care of CYS. Pursuant to 62 P.S. § 704.1, **Payments to counties for services to children,** the Pennsylvania Department of Welfare is responsible for reimbursement of county institution districts, according to a schedule of partial reimbursements detailed in subsections (a)(1) through (a)(8). Pursuant to subsection (e), the responsibility of parents to the maintenance and support of their children who are placed by the Juvenile Court with CYS is clearly spelled out as follows:

(e) If, after due notice to the parents or other persons legally obligated to care for and support the child, and after affording them an opportunity to be heard, the court finds that they are financially able to pay all or part of the costs and expenses stated in subsection (a), the court may order them to pay the same and prescribe the manner of payment. Unless otherwise ordered, payment shall be made to the

clerk of the court for remittance to the person to whom compensation is due, or if the costs and expenses have been paid by the county, to the appropriate officer of the county. The appropriate court to make this finding is the Juvenile Court or Family Court, pursuant to the Juvenile Act, 42 Pa.C.S. § 6301 *et seq.* The Criminal Court as an adjunct to its finding of guilt pursuant to the statutes quoted above relating to costs and restitution is not empowered to make the findings it attempted to make here based on its speculation of future earning possibilities. Consequently, we vacate that portion of the costs imposed on appellant for services rendered by CYS. We affirm, however, the remainder of the costs imposed.[2]

█ The final claim presented by appellant is that the sentence imposed, consisting of fines totalling $1,700,000 and costs totalling $210,910, as well as an aggregate prison term of 235 to 470 years' imprisonment, violates the constitutional guarantees against cruel and unusual punishment. This claim lacks any merit.

The United States Supreme Court stated recently that "the Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan,* 501 U.S. 957, ——, 111 S.Ct. 2680, 2683, 115 L.Ed.2d 836, 869 (1991) (Kennedy, J., joined by O'Connor and Souter, JJ., concurring in part and concurring in the judgment). *See Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). *See also Commonwealth v. Spells,* 417 Pa.Super. 233, 612 A.2d 458 (1992).

Given our vacation of the fine imposed on appellant, as well as the portion of costs attributable to CYS, we do not find this aspect of appellant's sentence grossly disproportionate to his crimes. Further, this Court is unaware of any case in this

2. Although we are constrained to vacate the fine and CYS costs imposed in this case, we recognize the trial court was aware of appellant's tenuous financial position, and the remote likelihood of collecting any money, and imposed those fines and costs as a deterrent to appellant and others committing such acts in the future. Our decision in this case should in no way be considered a weakening of our support for the underlying public policy goal in appropriate circumstances.

Commonwealth in which the term of imprisonment in a non-capital case was found to be "cruel and unusual." Absent such authority, we find the term of imprisonment proportionate to the crimes committed. *Jones, supra.*

For all of the foregoing reasons, we vacate the fine of $1,710,000 and costs of $137,500 for CYS imposed against appellant. We affirm all other aspects of the judgment of sentence.

Judgment affirmed in part; vacated in part.

Jurisdiction relinquished.

HUDOCK, J., concurs in the result.