J-S59035-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| JOEL BURGER | |
| Appellant | No. 2040 EDA 2016 |

Appeal from the Judgment of Sentence June 4, 2012
In the Court of Common Pleas of Lehigh County Criminal Division at No(s):
CP-39-CR-0000307-2011

BEFORE: BENDER, P.J.E., OTT and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED DECEMBER 18, 2017**

*Pro se* Appellant, Joel Burger, appeals *nunc pro tunc* from the judgment of sentence entered in the Lehigh County Court of Common Pleas following the entry of his negotiated guilty plea to twenty-two counts of burglary[1] and twenty-one counts of criminal conspiracy.[2]  Appellant alleges the trial court breached his plea agreement, and that his plea was involuntary.  We affirm.

We adopt the facts and procedural history[3] set forth by the trial court's

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 3502(a).

[2] 18 Pa.C.S. § 903.

[3] The trial court appointed direct appeal counsel; however, following Appellant's *pro se* "Petition to Withdraw Counsel And Proceed *Pro Se*," this Court ordered a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d

opinion. *See* Trial Ct. Op., 7/27/16, at 2-9. Appellant raises the following questions for our review.

> Did the trial court err when it imposed a greater sentence than permitted under the terms of the negotiated plea which the court accepted?
>
> Whether the [trial] court erred by advising [A]ppellant that the court was bound within a lower permissible range of sentence for Appellant's minimum sentence, and then, sentencing [A]ppellant to a higher term for the minimum sentence. Alternatively, is [A]ppellant's plea involuntary or unknowing due to the deficiencies in his guilty plea proceedings?
>
> Did the trial court err in failing to advise [A]ppellant that the sentence would not be in accordance with the terms of the negotiated plea and in failing to advise [A]ppellant of his right to withdraw his plea on this basis?
>
> Was the trial counsel ineffective per se in not raising above issue at sentencing or in the [p]ost-sentence motion, also disregarding [A]ppellant's insistence?
>
> Is the above sentence reviewable under plain error [s]tandard of review?

Appellant's Brief at 6-7.

We address the Appellant's first three arguments together. Appellant claims that the trial court breached the plea agreement by sentencing Appellant to a minimum sentence greater than the parties had agreed upon at the guilty plea hearing. Appellant contends the court was bound to a minimum between two to nine years' imprisonment but instead sentenced

---

81 (Pa. 1998). The trial court subsequently granted withdrawal of counsel and Appellant moved to proceed *pro se* on direct appeal.

Appellant to a minimum of fourteen years' imprisonment following a correction to his prior record score. Appellant alleges the court did not advise him that the error and subsequent correction to the prior record score would alter his minimum sentence. Therefore, Appellant claims his plea was involuntary because he did not receive notice of the higher minimum sentence. Appellant also asserts the court also never advised him of his right to withdraw his plea. Appellant maintains the court's breach of the plea agreement renders his sentence illegal. Appellant concludes this Court should vacate his judgment of sentence and remand for resentencing in accordance with the plea agreement. We disagree.

"Settled Pennsylvania law makes clear that by entering a guilty plea, the defendant waives his right to challenge on direct appeal all nonjurisdictional defects except the legality of the sentence and the validity of the plea." *Commonwealth v. Lincoln*, 72 A.3d 606, 609 (Pa. Super. 2013) (citation omitted). "A defendant wishing to challenge the voluntariness of a guilty plea on direct appeal must either object during the plea colloquy or file a motion to withdraw the plea within ten days of sentencing. Failure to employ either measure results in waiver." *Id.* (citations omitted).

However, a defendant has a right to seek specific performance of a plea agreement.

> "In determining whether a particular plea agreement has been breached, we look to 'what the parties to this plea agreement reasonably understood to be the terms of the agreement.'" Such a determination is made "based on the

totality of the surrounding circumstances," and "[a]ny ambiguities in the terms of the plea agreement will be construed against the [Commonwealth]."

***Commonwealth v. Hainesworth***, 82 A.3d 444, 447 (Pa. Super. 2013) (citations omitted).

We agree with the trial court that Appellant's sentence satisfied the literal terms of the plea agreement. The plea agreement only required the court to sentence Appellant for various groups of charges and arrive at a sentence within the standard range of the Sentencing Guidelines. ***See*** N.T., 4/18/12, at 6; Trial Ct. Op. at 12. During the plea colloquy, the trial court misstated the maximum possible minimum sentence based on the erroneous assumption that Appellant's prior record score was two instead of five. However, the court corrected this misstatement at sentencing and imposed a sentence in accordance with the correct prior record score.[4]

Appellant also contends that his guilty plea was involuntary, because he entered his guilty plea in reliance upon the trial court's erroneous statement that his prior record score was two, and that his minimum sentence would be in accordance with this prior record score (a minimum between two to nine years' imprisonment). Appellant argues, in so many words, that he would not have entered a guilty plea had he known that his prior record score was actually five, thus increasing his minimum sentence. We are constrained to

---

[4] To the extent that Appellant casts his enforcement of a plea agreement claim as a challenge to the legality of sentence, we disagree. ***See Commonwealth v. Berry***, 877 A.2d 479, 482 (Pa. Super. 2005) (*en banc*).

- 4 -

find this argument waived, because Appellant failed to raise any objection to the voluntariness of his plea at sentencing, in his post-sentence motion, or in a post-sentence motion *nunc pro tunc*.[5]  **See Lincoln**, 72 A.3d at 609-10.

In his fourth argument on appeal, Appellant argues that defense counsel provided ineffective assistance during sentencing and post-sentence proceedings.  This argument is premature; Appellant can only raise claims of ineffective assistance in a PCRA petition, not in this direct appeal.  **See** 42 Pa.C.S. § 9543(a)(2)(ii).

In his fifth and final argument, Appellant claims that this Court should invoke the plain error standard.  This argument fails because Pennsylvania has abolished the plain error doctrine.  **See Commonwealth v. Clair**, 326 A.2d 272, 273-74 (Pa. 1974).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/18/2017

---

[5] Appellant has the right to file a Post Conviction Relief Act ("PCRA") petition alleging that his guilty plea was involuntary.  42 Pa.C.S. § 9543(a)(2)(iii).  We express no opinion as to the merit of any such petition.

## IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
### CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA |

vs. | No. 307 / 2011
| 2040 EDA 2016

JOEL BURGER, |

Appellant |

July 27, 2016

Douglas G. Reichley, J.

### 1925(a) Opinion

Joel Burger, Appellant, is appealing *nunc pro tunc* from the judgment of sentence imposed on June 4, 2013 stemming from twenty-two burglaries to which Appellant pled guilty. For the reasons set forth herein, the Court's sentence was lawful and appropriate.

### Factual History

This case involves a string of burglaries that took place between June 15, 2010 and July 19, 2010. The burglaries were in Lehigh, Northampton, and Bucks Counties at various points. The approximate chronology of these events is as follows:

On June 15, 2010, a burglary occurred at 41 Allegheny Road, Upper Mount Bethel Township, Northampton County, Pennsylvania, where jewelry and a purse were taken.[1]

On June 17, 2010, a burglary occurred at 486 Grouse Drive, Bath, Northampton County, Pennsylvania. Jewelry and knives were removed from the residence.[2]

On June 18, 2010, a burglary occurred at 9000 N. Delaware Drive, Bangor, Northampton County, Pennsylvania. Collectible items and jewelry were taken.[3]

---

[1] Counts 33 and 34.
[2] Counts 41 and 42.
[3] Counts 35 and 36.

2

On June 22, 2010, a burglary occurred at 2839 Derhammer Road, Bath, Northampton County, Pennsylvania. A crossbow and a .50 caliber rifle were taken.[4]

On or between June 24, 2010 and July 5, 2010, a burglary occurred at 3220 Drifting Srive, Hellertown, Bucks County, Pennsylvania.[5]

On June 25, 2010, a burglary occurred at 5731 Paradise Road, Slatington, Lehigh County, Pennsylvania. A substantial amount of jewelry was taken.[6]

On or between June 26, 2010 and July 2, 2010, a burglary occurred at 1770 Pleasant View Road, Coopersburg, Bucks County, Pennsylvania. A 20 gauge shotgun was taken.[7]

On June 28, 2010, a burglary occurred at 4672 Timberline Road, Walnutport, Northampton County, Pennsylvania. Silver certificates were stolen.[8]

On June 28, 2010, a burglary occurred at 691 Birch Road, Walnutport, Northampton County, Pennsylvania. A Remington Model 760 Gamemaster with scope and a Remington Pump Action Rifle were taken.[9]

On June 29, 2010, a burglary occurred at 1180 S. Delaware Drive, Easton, Northampton County, Pennsylvania. A television, video camera, laptop computer, and numerous pieces of jewelry were taken.[10]

On or around July 2, 2010, a burglary occurred at 2418 Churchview Road, Coopersburg, Lehigh County, Pennsylvania. A cordless battery-powered Rigid drill was taken.[11]

On July 2, 2010, a burglary occurred at 529 Heyer Mill Road, Nazareth, Northampton County, Pennsylvania. A jewelry box and jewelry were taken.[12]

---

[4] Counts 43 and 44.
[5] Counts 13 and 14.
[6] Counts 7 and 8.
[7] Counts 11 and 12.
[8] Counts 23 and 24.
[9] Counts 21 and 22.
[10] Counts 37 and 38.
[11] Counts 5 and 6.

On or between July 7, 2010 and July 11, 2010, a burglary occurred at 2509 Stonesthrow Road, Bethlehem, Lehigh County, Pennsylvania. A jewelry box and jewelry were taken.[13]

On July 8, 2010, a burglary occurred at 2864 Rockdale Road, Slatington, Lehigh County, Pennsylvania. The home owner scuffled with Appellant when confronted in his home.[14]

On July 14, 2010, a burglary occurred at 1054 Keller Road, Wind Gap, Northampton County, Pennsylvania. The victims were home at the time of the burglary. Appellant's co-defendant, Sean Zamorano, ran out of the residence to a car being driven by Appellant.[15]

On July 15, 2010, a burglary occurred at 2143 Leithsville Road, Hellertown, Northampton County, Pennsylvania. Numerous antique items were stolen. [16]

On July 16, 2010, a burglary occurred at 2316 Springtown Hill Road, Hellertown, Northampton County, Pennsylvania. Two jewelry boxes with jewelry were taken.[17]

On or between July 16, 2010 and July 19, 2010, a burglary occurred at 309 E. Cherry Road, Quakertown, Bucks County, Pennsylvania.[18]

On July 19, 2010, a burglary occurred at 2078 Pleasant View Road, Coopersburg, Bucks County, Pennsylvania.[19]

On or between July 19, 2010 and July 20, 2010, a burglary occurred at 2425 Cutoff Road, Coopersburg, Bucks County, Pennsylvania. A jewelry box with jewelry was taken.[20]

On July 19, 2010, a burglary occurred at 6720 Reinbold Lane, Center Valley, Lehigh County, Pennsylvania. Twelve rifles, a jewelry box with jewelry, several electronic items, and

---

[12] Counts 25 and 26.
[13] Counts 1 and 2.
[14] Counts 9 and 10.
[15] Counts 27 and 28.
[16] Counts 29 and 30.
[17] Counts 31 and 32.
[18] Counts 19 and 20.
[19] Counts 17 and 18.
[20] Counts 15 and 16.

4

several tools including a Stihl chainsaw and a Central Pneumatic Air Compressor were taken. The saw and the air compressor belonged to the homeowner's brother.[21]

On July 21, 2010, Detective Joseph Pochran of the Allentown Police Department received a call from A-Town Pawn regarding a saw and a compressor. Both items were sold by Sean Zamorano. The brother of the homeowner for 6720 Reinbold Lane identified both items as belonging to him.

On July 26, 2010, a burglary occurred at 2529 Santee Mill Road, Bethlehem, Northampton County, Pennsylvania. A U.S. Historical Society colt baby fragoon black powder pistol, a U.S. Historical Society Robert E. Lee black powder pistol, and a .50 caliber Sharps rifle that had been mounted on the wall were taken.[22]

The same day, July 26, 2010, Sean Zamorano was arrested. He admitted to the July 19, 2010 burglary and indicated that Appellant assisted him in the commission of that burglary. Zamorano also admitted the other twenty-one burglaries identified above and implicated Appellant in all of them as well.

Appellant was arrested on September 14, 2010 in New Jersey for one count of Theft by Unlawful Taking of a Moving Vehicle. Appellant was subsequently arrested on December 2, 2010 by the Upper Saucon Police Department for the within offenses. He was charged with twenty-two (22) counts of Burglary,[23] all graded as Felonies of the First Degree, and twenty-two (22) counts of Conspiracy to Commit Burglary,[24] also graded as Felonies of the First Degree.

---

[21] Counts 3 and 4.
[22] Counts 39 and 40.
[23] 18 Pa.C.S.A. § 3502(a).

[24] 18 Pa.C.S.A. §§ 903, 3502(a).

## Procedural History

On February 16, 2012, Appellant was sentenced in the State of New Jersey to a period of five years with a thirty (30) month period of parole eligibility on two burglaries that occurred in New Jersey at the same time as the Pennsylvania ones. That sentence was to run concurrently with a prior sentence Appellant was serving at the time in Pennsylvania.[25]

On April 18, 2012, Appellant appeared before the undersigned and entered a guilty plea to all twenty-two counts of Burglary, as well as a guilty plea to all twenty-two counts of Criminal Conspiracy. Under the terms of the plea agreement, the Commonwealth agreed not to pursue any additional sentences for twenty-two counts of Criminal Conspiracy, functionally merging them with each of the corresponding Burglary charges. Additionally, the Commonwealth agreed to consolidate all of the burglaries into four groups. The Commonwealth agreed that the sentence imposed in each of the counts in each of the groups would run concurrently with one another, but there was not any agreement as to whether the groups of sentences would run concurrently or consecutively to one another. Additionally, Appellant was serving a New Jersey sentence at the time he entered his guilty plea, and there was not any agreement in this case as to whether his sentence would run concurrently or consecutively to that sentence.

On June 4, 2012, Appellant appeared before the Court for sentencing. After reviewing the sentencing guidelines, two of Appellant's victims testified. Appellant also testified and explained that his crimes resulted from a drug addiction.

---

[25] Appellant completed serving his prior Pennsylvania sentence for Forgery on July 5, 2012.

At the close of the sentencing hearing, the Court sentenced Appellant consistent with his plea agreement. The longest sentence for each group of counts was as follows:

| | |
|---|---|
| **Group 1:** (Burglary Counts 1, 3, 5, 7, and 9): | Not less than 5 nor more than 20 years in a State Correctional Institution |
| **Group 2:** (Burglary Counts 11, 13, 17, and 19): | Not less than 2 nor more than 10 years in a State Correctional Institution |
| **Group 3:** (Burglary Counts 23, 25, 27, 29, and 31): | Not less than 5 nor more than 20 years in a State Correctional Institution |
| **Group 4:** (Burglary Counts 15, 21, 33, 35, 37, 41, and 43): | Not less than 2 nor more than 10 years in a State Correctional Institution |

The Court ran all four groups consecutively to one another, making the cumulative total sentence fourteen (14) to sixty (60) years. Appellant was also made eligible for the Recidivism Risk Reduction Initiative (RRRI), which made his RRRI minimum approximately 11½ years. The sentence was also run consecutive to Appellant's New Jersey sentence.

On June 13, 2012, Appellant's counsel filed a Post Sentence Motion asking the Court to reconsider whether to run the sentences imposed in the within matter concurrently with Appellant's New Jersey sentence. The Court denied Appellant's motion on June 19, 2012.

Relevant to the within matter, on August 10, 2012, the New Jersey court modified Appellant's February 16, 2012 sentence to run concurrently to the sentences imposed in Appellant's Pennsylvania case.

On March 13, 2013, the Court received a letter from Appellant requesting that his sentence imposed in the within case be modified to run concurrently to his New Jersey sentence. The Court treated this request as a Petition for Post Conviction Relief pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. § 9541 *et seq.* The Court appointed Attorney Charles A. Banta as PCRA counsel.

7

On September 3, 2013, after obtaining transcripts and documentation from both the Pennsylvania and New Jersey cases, Attorney Banta filed a Petition to Withdraw as Counsel accompanied by an appropriate *Turner/Finley* Letter. However, on September 16, 2013, Attorney Banta filed a Petition to Withdraw the Petition to Withdraw as Counsel, and concurrently filed an Amended Petition for Post-Conviction Relief.

The Court attempted unsuccessfully to schedule a PCRA hearing for Appellant. However, after a series of phone calls, officials in New Jersey refused to produce Appellant for purposes of pursuing his PCRA petition in Pennsylvania. Due to technological limitations, the Court was also unable to schedule a hearing with Appellant appearing through live video feed. As a result of these difficulties, on October 25, 2013, the Court entered an order staying the PCRA matter until completion of Appellant's sentence in New Jersey or until such time that he would be released to the custody of Pennsylvania officials.

On July 29, 2014, the Court received a *pro se* Request for Amended Petition for Post Conviction Relief from Appellant.

On January 21, 2016, after receiving notice Appellant had returned to the Commonwealth of Pennsylvania, the Court lifted the stay.

Appellant filed another PCRA petition on March 24, 2016. On May 17, 2016, Appellant appeared before the undersigned on the PCRA matters. At that time, the Commonwealth agreed to reinstate Appellant's direct appeal rights *nunc pro tunc*. Based on that agreement, on the same day, the Court entered an order reinstating Appellant's appeal rights. The Court also appointed new counsel, Robert Sletvold, Esq., to represent Appellant in his direct appeal. The Court granted Appellant forty-five (45) days to file a Notice of Appeal.

Appellant filed his Notice of Appeal (Nunc Pro Tunc) on June 22, 2016. The Court directed him to file a Concise Statement of Matters Complained of on Appeal on June 28, 2016. Appellant filed his Concise Statement on July 18, 2016.

This Opinion follows.

## Discussion

In Appellant's Concise Statement, Appellant raised 3 issues:

1. Whether the Court imposed a greater sentence than permitted under the terms of the negotiated plea,

2. Whether the Court erred in finding the guilty plea was knowing, voluntary and intelligent where one of the inducements to plead was the length of the minimum sentence which the Court allegedly exceeded in imposing the sentence, and

3. Whether the Court erred in failing to advise Appellant the sentence would not be in accordance with the terms of the negotiated guilty plea and failing to advise the defendant of his right to withdraw his plea on that basis.

In Appellant's PCRA petition, Appellant averred that Attorney Ritter, Appellant's trial counsel, induced his plea by promising that Appellant's sentence would not be less than 7 years nor more than 14 years. This issue appears to stem from the question of whether Appellant's sentence would run concurrently with or consecutively to his sentence in New Jersey.

Trial courts are afforded broad discretion in sentencing. *Commonwealth v. Miller*, 835 A.2d 377, 380 (Pa. Super. 2003); *Commonwealth v. Mouzon*, 812 A.2d 617, 621 (Pa. 2002). A sentence will not be disturbed absent an abuse of that discretion. *Mouzon*, 812 A.2d at 621 (citing *Commonwealth v. Ritchey*, 779 A.2d 1183, 1185 (Pa. Super. 2001)). A four-pronged analysis is required before the Superior Court will review the merits of a challenge to the

9

discretionary aspects of a sentence. *See Commonwealth v. Hyland*, 875 A.2d 1175, 1183 (Pa. Super. 2005). These prongs are:

> (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Id.* (citations omitted).

Whether something constitutes a substantial question is evaluated on a case-by-case basis. *Commonwealth v. Anderson*, 830 A.2d 1013, 1018 (Pa. Super. 2003) (citing *Commonwealth v. Losch*, 535 A.2d 115, 119 n.7 (Pa. Super. 1987)). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Sierra*, 752 A.2d 910, 913 (Pa. Super. 2000) (quoting *Commonwealth v. Brown*, 741 A.2d 726, 735 (Pa. Super. 1999) (*en banc*), *appeal denied*, 567 Pa. 755, 790 A.2d 1013 (2001)).

A claim of excessiveness of sentence may raise a substantial question requiring the appellate court's review, even where the sentence is within the statutory limits. *Mouzon*, 812 A.2d at 626-28. Nonetheless, a sentencing court has not "abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill will." *Commonwealth v. Smith*, 673 A.2d 893 (Pa. 1996) (quoting *Commonwealth v. Lane*, 424 A.2d 1325, 1328 (Pa. 1981)).

The Supreme Court of Pennsylvania explained that "[d]eference is accorded to the trial court's pronouncement because of the perception that the trial court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual

10

circumstances before it." *Commonwealth v. Ward*, 568 A.2d 1242, 1243 (Pa. 1990). Thus, a sentence will not be disturbed unless it was manifestly excessive or outside the statutory limits. *Commonwealth v. Ellis*, 700 A.2d 948, 958 (Pa. Super. 1997). Sentencing judges are guided by the general principles of protecting the public, weighing the gravity of the offense in relation to its impact on the community and the life of the victim, and the defendant's rehabilitative needs. 42 Pa.C.S. §9721(b).

Sentencing judges are generally encouraged to adhere to the sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing. *Mouzone*, 812 A.2d at 620. Nonetheless, it is well-established that the guidelines are not mandatory, and that it is within the discretion of courts to sentence outside the guidelines. *Id.* at 621. There must be some indication that the sentencing judge understood the suggested range. *Commonwealth v. Tirado*, 870 A.2d 362, 366 (Pa.Super. 2005). If the sentence imposed is outside the guidelines, the trial judge must make the reasons for the sentence a part of the record. *Id.*; 42 Pa.C.S. §9721(b). Whether a sentence is concurrent with or consecutive to other sentences previously imposed is a matter entrusted to the sentencing court's discretion. *Commonwealth v. Hoag*, 665 A.2d 1212, 1214 (Pa. Super. 1995) (citation omitted). Challenges to the imposition of consecutive rather than concurrent sentences do not constitute substantial questions regarding discretionary aspects of sentences. *Id.* (citing *Commonwealth v. Gaddis*, 639 A.2d 462, 469-70 (Pa. Super. 1994)).

As noted above, Appellant's first issue that the Court imposed a greater sentence than the one to which Appellant agreed under his negotiated plea deal. Appellant's third issue is related to the first in that Appellant avers the Court failed to advise him the sentence would not be in accordance with the plea agreement. Both assertions are incorrect.

11

During Appellant's guilty plea hearing, the Assistant District Attorney explained that under the terms of the agreement, Appellant would be entering guilty pleas to all of the Burglary counts. The Commonwealth agreed to consolidate the counts into four separate groupings: one for the incidents which occurred in Lehigh County (Counts 1 through 10), one for the incidents which occurred in Bucks County (Counts 11 through 20), and two groups of six counts for the twelve total incidents which occurred in Northampton County (Counts 21 to 32, and Counts 33 to 44). (N.T. Guilty Plea Hearing, April 18, 2012, at 3.) Each of the Counts in the four groups were to run concurrently with one another and be standard range sentences. (*Id.*) There was not any agreement on concurrency between the groups. (*Id.*) Additionally, Appellant was serving a sentence of three to five years for burglaries in New Jersey. (*Id.* at 5.) There was not any agreement on whether the Pennsylvania sentence would run concurrently with or consecutively to the New Jersey sentence. (*Id.*)

In two of the twenty-two burglary incidents for which Appellant was sentenced in this matter, people were present in the homes at the time of the crime. One of these was counted in Group 1 (Counts 9 and 10), and the other was in Group 3 (Counts 27 and 28). (*Id.* at 3-4.) Under the Pennsylvania Sentencing Guidelines, the Offense Gravity Score for Groups 1 and 3 was a 9, and the Offense Gravity Score for Groups 2 and 4 was a 7. 204 Pa. Code § 303.15.

At the time Appellant entered his guilty plea, the Commonwealth mistakenly indicated Appellant's prior record score was a 2. Based on that miscalculation, the Court advised Appellant as follows:

> THE COURT: So, you need to understand -- and Attorney Edwards already mentioned -- you're facing 80 years as a maximum. That's if I ran all four sets of the sentences consecutively. Do you understand that?
>
> MR. BURGER: Yeah.

THE COURT: It's a life sentence, essentially, for you. The -- under the plea agreement -- and when you said standard range, I take it you're binding me to a minimum of greater than the standard range?

MR. EDWARDS: Correct, Judge.

THE COURT: So, worst case scenario, I think you said 9 years?

MR. EDWARDS: 9 years, Judge.

THE COURT: That could be the most on your minimum period of incarceration; do you understand that?

MR. BURGER: Yes.

(N.T. Guilty Plea Hearing, April 18, 2012, at 10-11.)

After Appellant entered his guilty plea, a Presentence Investigation Report (PSI) was performed. The PSI which originally identified Appellant's prior record score as a Repeat Felony Offender (RFEL). However, at the time of sentencing, the District Attorney reported that all of the calculations were incorrect because Appellant's proper prior record score was a 5, not a RFEL. At the beginning of the sentencing hearing, the Court stated:

THE COURT: Technically, for the record, we made a determination that on the sentencing guideline calculation sheet, there were two Felony 2 juvenile adjudications but not a Felony [2] adult adjudication. Meaning that the score -- I guess it's area B -- was a 4 instead of a 6. Under area C of the guideline calculation sheet, we found one Felony drug offense for 2 points and one other Misdemeanor offense. I take that back. There's 4 with three Misdemeanor convictions yielded one point, and he retained one point there. However, because the combined number for part A and part B is not 6 or greater, that the score for part C would be 4, the score for part B is 4, giving Mr. Burger a prior record score of 5. Is that correct?

MR. RITTER: Yes, Your Honor.

(N.T. Sentencing, June 4, 2012, at 4.)

Based on Appellant's Prior Record Score as a 5, the standard range for each of the Groups was as follows:

13

|            |                |
|------------|----------------|
| Group 1:   | 48 - 60 months |
| Group 2:   | 24 - 30 months |
| Group 3:   | 48 - 60 months |
| Group 4:   | 24 - 30 months |

204 Pa.Code. § 303.16(a).

The Notes of Testimony reflect that this information was extensively reviewed at the sentencing hearing prior to the imposition of a sentence. (N.T. Sentencing, June 4, 2012, at 2-7.) Appellant did not speak up at that time about the increased standard range based on the corrected prior record score. As noted above, the Court imposed a sentence of five to ten years for Groups 1 and 3, and two to four years for Groups 2 and 4. All four Groups ran consecutively to one another, and the sentence was run consecutively to the New Jersey sentence. The cumulative total sentence was fourteen to sixty years,[26] which was consistent with the terms of Appellant's plea agreement. Based on the foregoing, Appellant's first issue is incorrect and is belied by the record. Because Appellant was sentenced in accordance with his plea agreement, his third issue is also belied by the record.

Appellant's remaining allegation of error on appeal is that the Court erred in finding his guilty plea was knowing, voluntary, and intelligent because Appellant alleges he was induced to plead based on the length of the minimum sentence which the Court exceeded. As an initial matter, as discussed above, the Court sentenced Appellant consistent with his plea agreement and the minimum sentence was proper under the terms of that agreement.

---

[26] Because Appellant was made RRRI eligible, his minimum sentence is actually approximately eleven and a half years instead of fourteen.

When evaluating whether a defendant's plea was entered knowingly and voluntarily, a court will look at the totality of circumstances surrounding the entry of the plea. *Commonwealth v. Moser*, 921 A.2d 526, 529 (Pa.Super. 2007).

> Once a defendant has entered a plea of guilty, it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him. Therefore, where the record clearly demonstrates that a guilty plea colloquy was conducted, during which it became evident that the defendant understood the nature of the charges against him, the voluntariness of the plea is established.... Determining whether a defendant understood the connotations of his plea and its consequences requires an examination of the totality of the circumstances surrounding the plea.

> [I]n order to determine the voluntariness of the plea and whether the defendant acted knowingly and intelligently, the trial court must, at a minimum, inquire into the following six areas:

> > (1) Does the defendant understand the nature of the charges to which he is pleading guilty?
> > (2) Is there a factual basis for the plea?
> > (3) Does the defendant understand that he has a right to trial by jury?
> > (4) Does the defendant understand that he is presumed innocent until he is found guilty?
> > (5) Is the defendant aware of the permissible ranges of sentences and/or fines for the offenses charged?
> > (6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

*Commonwealth v. McCauley*, 797 A.2d 920, 922 (Pa. Super. 2001)

In the current case, the trial court went through an extensive colloquy to determine that Appellant knew what he was doing by entering his guilty plea, and that he did so voluntarily. The Court inquired of Appellant whether he understood the charges to which he was pleading guilty. (N.T. Guilty Plea Hearing, April 18, 2012, at 18-19, 44-45.) The Court found that there was a factual basis for the plea based on the facts as set forth by the District Attorney. (*Id.* at 45-46.) Additionally, Appellant testified on the record that he understood his right to a trial by jury,

that he was innocent until proven guilty, and that the Court was not bound to accept the plea agreement. (*Id.* at 12-15.)

One of the issues Appellant sought to advance during the PCRA which preceded the instant *nunc pro tunc* appeal was that Appellant was misled as to the sentence he faced on the Pennsylvania charges due to receiving inaccurate information from his New Jersey counsel. At the time of Appellant's guilty plea, he asked whether he could serve his sentence in Pennsylvania rather than in New Jersey. (N.T. Guilty Plea Hearing, April 18, 2012, at 8.) At that time, Appellant explained:

> MR. BURGER: Right. My lawyer in New Jersey kind of swayed me saying that, you -- well,, talking to [Attorney] Ritter now that -- he's saying I was misguided. That cause of these two burglaries stemming from the 24th, that he would run it together, and that I would be doing all my time in P.A., which Ritter told me isn't true. That you have the last say in all that.
>
> THE COURT: I have the option.
>
> MR. BURGER: Right.
>
> THE COURT: There's no guarantee.
>
> MR. RITTER: He was advised -- excuse me, Your Honor. He was advised by his New Jersey attorney that if he pled guilty that this would run concurrently in Pennsylvania. I said there's no way that could possibly happen because you have the discretion to go last, and it's the final sentencing Judge that sets the concurrency.

(*Id.* at 8-9.)

Based on the foregoing, the record indicates that while Appellant received incorrect legal advice in New Jersey, he was made aware of all of the accurate legal aspects of his plea and sentencing prior to entering his guilty plea. Additionally, as discussed above, while Appellant was incorrectly advised during his guilty plea hearing that his longest possible minimum on the Pennsylvania sentences was nine years instead of fourteen, that number was corrected at the

16

sentencing hearing and reviewed extensively to ensure Appellant understood the range of sentences. This is further evidenced by the fact that in Appellant's post-sentence motion, the only request was for the Pennsylvania sentence to run concurrently with the New Jersey sentence so that he could serve his sentences in Pennsylvania rather than New Jersey.

Accordingly, the record supports the Court's finding that Appellant's guilty plea was entered knowingly, voluntarily, and intelligently. As a result, Appellant's second issue on appeal affords him no relief.

## Conclusions

Appellant was sentenced in a manner consistent with his plea agreement. Furthermore, all of the necessary aspects of his sentence were discussed in depth on the record and Appellant demonstrated that he was knowingly, voluntarily, and intelligently entering a guilty plea. As a result, the Court respectfully recommends that Appellant's judgment of sentence be affirmed.

By the Court:

Douglas G. Reichley, J.

17