J-S13002-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| GENE BROWN | : | |
| | : | |
| Appellant | : | No. 751 WDA 2016 |

Appeal from the Judgment of Sentence February 22, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0002887-2015

BEFORE: GANTMAN, P.J., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED APRIL 11, 2018**

Appellant, Gene Brown, appeals from the judgment of sentence entered in the Allegheny County Court of Common Pleas, following his bench trial conviction for robbery.[1] We affirm.

In its opinion, the trial court accurately set forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them.

Appellant raises two issues for our review:

> SHOULD APPELLANT…HAVE BEEN ACQUITTED ON THE CRIME OF ARMED ROBBERY DUE TO THE COMMONWEALTH'S FAILURE TO PRESENT EVIDENCE PROVING, BEYOND A REASONABLE DOUBT, THAT HE WAS THE PERSON WHO ROBBED THE VICTIM…?
>
> EVEN IF THE COMMONWEALTH'S EVIDENCE WAS SUFFICIENT FOR A CONVICTION, SHOULD NOT

---

[1] 18 Pa.C.S.A. § 3701.

APPELLANT'S POST-SENTENCE [MOTION] SEEKING A NEW TRIAL HAVE BEEN GRANTED?

(Appellant's Brief at 3).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable David R. Cashman, we conclude Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Trial Court Opinion, filed May 16, 2017, at 6-11) (finding: **(1)** Commonwealth's evidence was sufficient to identify Appellant as Victim's assailant, despite inaccuracies; Appellant ignores fact that Victim identified Appellant at photo array, at preliminary hearing, and at trial; Appellant's own statements to his sister on recorded prison phone call supported Victim's identification testimony; Appellant actually identified himself as perpetrator, in phone conversation with his sister, when he said this Victim lived behind Sunoco station; Appellant testified at trial that he knew Victim lived behind Sunoco station through information acquired at preliminary hearing when he reviewed discovery material, which he said included Victim's address; however, criminal complaint and affidavit of probable cause did not list Victim's address, and preliminary hearing took place after Appellant's phone call with his sister; **(2)** court as fact-finder evaluated credibility of Victim and Appellant, who both testified at trial; Victim was unequivocal in her identification of Appellant at photo array, at preliminary hearing, and at trial; discrepancies between Victim's initial physical description of assailant and

Appellant's actual height, age, and weight did not mean Victim misidentified Appellant; during phone conversation with his sister, Appellant did not deny robbing Victim, and Appellant provided his sister with information about Victim that he could not have learned at preliminary hearing, because preliminary hearing took place two months after phone call; verdict was not against weight of evidence). Accordingly, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/11/2018

IN THE FIFTH JUDICIAL DISTRICT OF THE COMMONWEALTH OF
PENNSYLVANIA
COUNTY OF ALLEGHENY

COMMONWEALTH OF PENNSYLVANIA

vs.

GENE BROWN

CRIMINAL DIVISION
CC No. 201502887
Superior Court No. 751WDA2016

**OPINION**

JUDGE DAVID R. CASHMAN
308 Courthouse
436 Grant Street
Pittsburgh, PA 15219
(412) 350-3905

Copies Sent To:

Michael Streily, Esquire
  (Interoffice)
Office of the District Attorney
4th Floor, Courthouse
Pittsburgh, PA 15219

Scott B. Rudolf, Esquire
  (Interoffice)
Office of the Public Defender
400 County Office Building
Pittsburgh, PA 15219

ORIGINAL
Criminal Division
Dept. of Court Records
Allegheny County, PA.

FILED
2017 MAY 16 PM 4: 08
DEPT. OF COURT RECORDS
CRIMINAL DIVISION
ALLEGHENY COUNTY PA

IN THE FIFTH JUDICIAL DISTRICT OF THE COMMONWEALTH OF
PENNSYLVANIA
COUNTY OF ALLEGHENY
CRIMINAL DIVISION


COMMONWEALTH OF PENNSYLVANIA ) CC No. 201502887
          vs.                          ) Superior Court No. 751WDA2016
GENE BROWN                   )

## OPINION


On February 17, 2016, following a non-jury trial, the appellant, Gene Brown, (hereinafter referred to as "Brown"), was found guilty of the charge of robbery, graded as a felony in the first degree. A presentence report was ordered and in light of the fact that a presentence report had been prepared for Judge Williams as a result of Brown's conviction of another robbery charge, this Court scheduled sentencing for February 22, 2016. Following a sentencing hearing, Brown was sentenced to a period of incarceration of not less than three and one-half nor more than seven years consecutive to any sentence he was now serving, which was to be followed by a period of probation of seven years, during which he was to undergo random drug screening. Brown filed timely post-sentence motions on March 3, 2016, which motions, following a hearing, were denied on April 26, 2016.

Brown filed a timely appeal to the Superior Court and was directed, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), to file a concise statement of matters complained of on appeal. In that statement, Brown has raised seven claims of error. Initially Brown maintains that the

2

evidence was insufficient to support the conviction for robbery since the Commonwealth did not prove beyond a reasonable doubt the identity of the individual who committed this crime. Brown next maintains that the grading of the charge of robbery should have been a felony in the second degree since the Commonwealth did not establish that he threatened the victim with or put her in fear of serious bodily injury. Brown also maintains that his conviction for the crime of robbery was against the weight of the evidence. Brown also maintains that the Court erred in sentencing him when the guidelines incorporated the deadly weapons enhancement. Brown also suggests that this Court abused its discretion when it imposed what he believes to be a manifestly excessive sentence in view of the totality of the circumstances. Brown further maintains that this Court abused its discretion when it imposed the sentence consecutive to any sentence that he was now serving. Finally, Brown maintains that this Court abused its discretion when it denied his request to modify his sentence which was filed in his post-sentence motions.

On December 27, 2014, at approximately 11:45 p.m., the victim, Taneisha Helms, (hereinafter referred to as "Helms"), was returning to her residence located at 2337 Reed Street in the City of Pittsburgh after making purchases of some snacks and cigarettes at a Sunoco service station. In addition to the bag containing her purchases, she also had a cell phone. As she was walking in an alleyway from the Sunoco station to her residence,

3

someone ran up behind her and told her to "Shut the "F" up or he would blow her head off." This individual demanded her money and her phone then pushed her into a corner of the alley while he was holding a shotgun that was pointed at her head. Helms gave him the ten dollars that she had and her phone. He then ordered her to take off her clothing and as she dropped each article of clothing, the assailant would grab those items and put them in a bin at the other end of the alleyway. He did this with her shoes, socks, pants and her underwear, each time separately taking those items to the end of the alley.

Helms had an opportunity to view her assailant in light of the numerous times that he picked up her clothing from her and she described him as being all dressed in black with a black hoodie, a black Carhartt jacket, black jeans and black shoes. When her assailant was placing the last item of her clothing at the other end of the alley, someone opened their window, looked down and saw her attacker, at which point he told Helms to get out of there and she ran from him and never looked back.

Helms ran to her mother's residence which was two doors down from hers and had her mother make a call to the police since she no longer had a phone. The police arrived and she advised them of what had transpired and also told them about the fact that she had been forced to strip and that her attacker placed her items of clothing at the other end of the alley. The police went to the alley and then recovered her clothing. When she was interviewed

4

by the police, she described her attacker as being a black male, somewhere between the ages of eighteen and twenty-two, approximately five foot six to five foot seven and one hundred fifty pounds with a thin build. She told them that she did not know this person and that she was able to recognize him because although he had a hoodie, it was covering his head and not his face. She was shown a photo array and immediately picked out Brown as the individual who robbed her. After she identified him from the photo array, Helms remembered that she had babysat for him until he was approximately two years old and that she knew Brown's mother.

Brown was arrested on January 12, 2015, and he had a telephone conversation with his sister on January 16, 2015. In that phone conversation, Brown asked his sister to contact Delisha Woodson and try to talk to her. His sister then asked him is that the woman that he made strip and he said no, that woman lives behind the Sunoco station. His sister then advised him that the one that he made strip is the one that is on the news. She asked him if he knew that to which he provided no response. His sister then told him that the woman he made strip is the one that she should talk to.

Brown elected to testify and when he was asked by his counsel how he knew that the woman was caused to be stripped lived behind the Sunoco station, Brown stated that before this phone call to his sister, he went to a preliminary hearing and received the paperwork which provided him with

5

the address for the victim and incident report with respect to what had happened. With this information he became aware of where she lived and what her address was. On cross-examination, Brown stated that he got the information from watching news coverage while he was in the jail.

Brown has maintained that the evidence was insufficient to support the verdict against him since the Commonwealth did not establish beyond a reasonable doubt the identity of Helms' attacker. He further maintains that the verdict was against the weight of the evidence. In *Commonwealth v. Widmer, 560 Pa. 308, 744 A.2d 745, 751-752 (2000)*, the Supreme Court set forth the standards to be employed when confronted with the claims that the evidence was insufficient to support the verdict and the verdict was against the weight of the evidence and the significance of those particular claims

> Appellant's remaining claim of error is that the Superior Court misstated the standard of review for a weight of the evidence claim. The standard of review refers to *how* the reviewing court examines the question presented. *Morrison*, 646 A.2d at 570. Appellant asserts that the Superior Court improperly interjected sufficiency of the evidence principles into its analysis and thus adjudicated the trial court's exercise of discretion by an incorrect measure.

> In order to address this claim we find it necessary to delineate the distinctions between a claim challenging the sufficiency of the evidence and a claim that challenges the weight of the evidence. The distinction between these two challenges is critical. A claim challenging the sufficiency of the evidence, if granted, would preclude retrial under the double jeopardy provisions of the Fifth Amendment to the United States Constitution, and Article I, Section 10 of the Pennsylvania Constitution, *Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); *Commonwealth v. Vogel*, 501 Pa. 314, 461 A.2d 604 (1983), whereas a claim challenging the weight of the evidence if granted would permit a second trial. *Id.*

6

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. *Commonwealth v. Karkaria*, 533 Pa. 412, 625 A.2d 1167 (1993). Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. *Commonwealth v. Santana*, 460 Pa. 482, 333 A.2d 876 (1975). When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. *Commonwealth v. Chambers*, 528 Pa. 558, 599 A.2d 630 (1991).

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. *Commonwealth v. Whiteman*, 336 Pa.Super. 120, 485 A.2d 459 (1984). Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. *Tibbs*, 457 U.S. at 38 n. 11, 102 S.Ct. 2211.[FN3] An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. *Commonwealth v. Brown*, 538 Pa. 410, 648 A.2d 1177 (1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. *Thompson, supra.* A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Id.*

> FN3. In *Tibbs*, the United States Supreme Court found the following explanation of the critical distinction between a weight and sufficiency review noteworthy:
>
> When a motion for new trial is made on the ground that the verdict is contrary to the weight of the evidence, the issues are far different.... The [trial] court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses. If the court concludes that, despite the abstract

> sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury.

*Tibbs* 457 U.S. at 38 n. 11, 102 S.Ct. 2211 *quoting United States v. Lincoln*, 630 F.2d 1313 (Cir. 8 th 1980).

With respect to the claim that the evidence was insufficient to support the verdict against him because the Commonwealth failed to establish the identity of the individual who robbed him, Brown points out the conflict in the information given to the police and Brown's physical description. When Helms was initially interviewed by the police, she told them that her assailant was anywhere between five six and five seven, one hundred and fifty pounds, with a thin build and was approximately eighteen to twenty-two years old. Brown was eighteen at the time, six feet one and two hundred and twenty pounds. Brown believes that this testimony was more than sufficient to discredit Helms' identification of him as her assailant. This contention ignores the fact that Helms identified him from a photo array, identified him at the preliminary hearing that was ultimately held on March 2, 2015, and also identified him at the time of trial. While there was some dispute as to the description given by Helms as to the person that robbed her, her identification of Brown was supported by Brown's own statements in a phone conversation that he had with his sister. When he sister asked him if Delisha Woodson was the individual he made strip, he said no, that individual lived

8

right behind the Sunoco station. Brown maintained that he was able to make this statement based upon the information that he had acquired at the preliminary hearing when he was given the discovery material in his case and was given the victim's address. It should be noted that a review of the criminal complaint and the affidavit of probable cause does not disclose the victim's address and Brown's preliminary hearing occurred almost two months after he was arrested since it had been continued several times. If he would have obtained the information in the discovery materials as to the victim's address when he got that material at his preliminary hearing, then he would have obtained that information almost two months after he had the conversation with his sister, which was four days after he was arrested. In viewing in the light most favorable to the Commonwealth and all reasonable inferences drawn therefrom, it is clear that the Commonwealth established the identity of Helms' attacker and that Brown was properly convicted of that charge.

An Appellate Court's standard of review when presented with the claim that the verdict was against the weight of the evidence is distinct from the standard of review applied by the Trial Court

> **Appellate review** of a weight claim is a **review** of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. *Brown,* 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an **appellate** court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. *Commonwealth v. Farquharson,* 467 Pa. 50, 354 A.2d 545 (1976). One of the least assailable reasons for *322 granting or denying a new trial is the

9

lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice. *Brown, supra.*

Com. v. Widmer, 560 Pa. 308, 321–22, 744 A.2d 745, 753 (2000).

. . .

The term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

Com. v. Widmer, 560 Pa. 308, 322, 744 A.2d 745, 753 (2000)

In using these standards, it is clear that this Court acting as the fact-finder in the non-jury trial, had a full opportunity to review the testimony in this matter and observe the witnesses that were called to testify, specifically the victim and the appellant, who elected to testify. Helms was unequivocal in her identification of Brown at the time that she was presented with a photo array, at the preliminary hearing and at the time of trial. Although there was a discrepancy in what she initially reported to the police and Brown's physical size, that description did not mean that she was inaccurate in identifying him as the person that robbed her. Brown on the other hand never denied robbing her to his sister during their phone conversation and, in fact, provided his sister with information that he had to know prior to his preliminary hearing since he had not been given the discovery material until almost two months after he was arrested. In taking these factors into

10

consideration, it is clear that the verdict was appropriate and not against the weight of the evidence.

Brown next maintains that he was improperly convicted of the crime of robbery graded as a felony in the first degree as opposed to robbery, a felony in the second degree. The crime of robbery is set forth at 18 Pa.C.S.A. §3701 as follows:

§3701. Robbery

**(a) Offense defined.--**
(1) A person is guilty of robbery if, in the course of committing a theft, he:
(i) inflicts serious bodily injury upon another;
(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;
(iii) commits or threatens immediately to commit any felony of the first or second degree;
(iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury;
(v) physically takes or removes property from the person of another by force however slight; or
(vi) takes or removes the money of a financial institution without the permission of the financial institution by making a demand of an employee of the financial institution orally or in writing with the intent to deprive the financial institution thereof.
(2) An act shall be deemed "in the course of committing a theft" if it occurs in an attempt to commit theft or in flight after the attempt or commission.
(3) For purposes of this subsection, a "financial institution" means a bank, trust company, savings trust, credit union or similar institution.
**(b) Grading.--**
(1) Except as provided under paragraph (2), robbery under subsection (a)(1)(iv) and (vi) is a felony of the second degree; robbery under subsection (a)(1)(v) is a felony of the third degree; otherwise, it is a felony of the first degree.
(2) If the object of a robbery under paragraph (1) is a controlled substance or designer drug as those terms are defined in section 2 of the act of April 14, 1972 (P.L. 233, No. 64),1 known as The Controlled Substance, Drug, Device and Cosmetic Act, robbery is a felony of the first degree.

Brown maintains that based upon the evidence presented at the time of trial, he should have been convicted of the crime of robbery as identified under

11

§3701(e)(1)(iv), which means that at the time of the commission of the robbery, the victim was threatened or intentionally put in fear of immediate bodily injury as opposed to the crime of robbery under §3701(a)(2), where the victim is threatened with or intentionally put in fear of immediate serious bodily injury. The undisputed testimony in this case is that Brown came up from behind Helms with a shotgun and pointed it at her head and told her to be quiet or he would blow her head off. This threat can only be considered a threat to inflict serious bodily injury or death. Brown continued these threats when he continually pointed the shotgun at Helms' head during the course of this robbery and when he was forcing her to disrobe. Nothing about this threat which would suggest that the injury that was threatened was anything but serious bodily injury. It is clear that when he threatened to blow her head off that he was placing her in fear of serious bodily injury or death.

Brown next maintains that this Court erred when it used the deadly weapons enhancement in determining the guidelines for Brown's sentence. In this regard while Brown maintains that the applicability of the deadly weapon enhancement had to be proven beyond a reasonable doubt in light of the decisions in *Alleyne v. United States, 133 S.Ct. 2151 (2013)* and *Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000)*. This contention has been rejected in Pennsylvania in *Commonwealth v. Buterbaugh, 91 A.3d 1247, 1270 (Pa. Super. 2014)*, when the Court noted

12

that the deadly weapon enhancement did not prescribe a standard range beyond the statutory maximum and, accordingly, the factors to consider the deadly weapon enhancement only had to be proved by the preponderance of the evidence. It should be noted that even using the sentencing guidelines where the deadly weapon enhancement has been invoked, Brown's sentence of three and one-half to seven years was near the bottom end of the standard range.[1]

Brown's final three claims of error all deal with sentencing in that he maintains that his sentence was manifestly excessive in view of the totality of the circumstances; that this Court abused its discretion when it ordered that his sentence be served consecutive to any sentence he was now serving; and, that this Court abused its discretion when it denied the modification of his sentence. In *Commonwealth v. Mouzon, 828 A.2d 1126, 1128-1129 (Pa. Super. 2003)*, the Court examined the claim of whether or not a sentence was excessive and set forth the factors that were to be considered in making that determination.

> Sentencing is a **matter vested** in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. *Commonwealth v. Johnson*, 446 Pa.Super. 192, 666 A.2d 690 (1995). "To constitute an abuse of discretion, the sentence imposed must either exceed the statutory limits or be manifestly excessive." *Commonwealth v. Gaddis*, 432 Pa.Super. 523, 639 A.2d 462, 469 (1994) (citations omitted). In this context, an abuse of discretion is not shown merely by an error in judgment. *Commonwealth v. Kocher*, 529 Pa. 303, 602 A.2d 1308

---

[1] The Sentencing Guidelines using the deadly weapon enhancement show a mitigated range sentence of twenty-eight months, a standard range sentence of forty to fifty-four months, and an aggravated range of sixty-six months.

13

(1992). Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. *Commonwealth v. Rodda,* 723 A.2d 212 (Pa.Super.1999).

In determining whether a sentence is manifestly excessive, the appellate court must give great weight to the sentencing court's discretion, as he or she is in the best position to measure factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference. *Commonwealth v. Ellis,* 700 A.2d 948, 958 (Pa.Super.1997). Where an excessiveness claim is based on a court's sentencing outside the guideline ranges, we look, at a minimum, for an indication on the record that the sentencing court understood the suggested sentencing range. 42 Pa.C.S.A. § 9721(b); *Rodda,* 723 A.2d at 214. When the court so indicates, it may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offenses as it relates to the impact on the life of the victim and the community, so long as the court also states of record "the factual basis and specific reasons which compelled him to deviate from the guideline range." *Commonwealth v. Cunningham,* 805 A.2d 566, 575 (Pa.Super.2002) (quoting *Commonwealth v. Burkholder,* 719 A.2d 346, 350 (Pa.Super.1998)).

In evaluating a claim of this type, an appellate court must remember that the sentencing guidelines are merely advisory, and the sentencing court may sentence a defendant outside of the guidelines so long as it places its reasons for the deviation on the record. *Cunningham,* 805 A.2d at 575. "Our Supreme Court has indicated that if the sentencing court proffers reasons indicating that its decision to depart from the guidelines is not unreasonable, we must affirm a sentence that falls outside those guidelines...." *Commonwealth v. Davis,* 737 A.2d 792, 798 (Pa.Super.1999) (citing *Commonwealth v. Smith,* 543 Pa. 566, 673 A.2d 893 (1996)).

In reviewing Brown's sentence, it is clear that there is nothing manifestly excessive about his sentence. His sentence was near the bottom end of the standard range and was three and one-half to seven years to be

14

followed by a period of probation of seven years. This Court had the benefit of those guidelines and a presentence report which showed a continuing escalation of Brown's violent criminal behavior. His first contact with the criminal justice system occurred when he was eleven years old when his mother filed a petition for dependency stating that her son was out of control, aggressive and defiant and would leave their residence for a week without permission. Approximately one year later on December 22, 2008, a petition was filed charging him with failure to comply with a lawful sentence for his failure to pay fines and costs relative to an adjudication of harassment. Another petition for dependency was filed on February 3, 2009 when it was alleged that he would not follow the rules at his home, including curfew and school attendance and he was being verbally abusive to his mother. On January 19, 2011, another petition was filed charging failure to comply as a result of his purchase of alcoholic beverages by a minor, disorderly conduct and harassment. During the summer of 2012, he was sent to Orlando, Florida to reside with a relative and while there, he was charged as a juvenile with sexually assaulting an eleven-year-old boy. On December 13, 2012, his mother once again filed a petition for dependency and a petition for protection of abuse since he continued to be violent and was threatening everyone in his house and was using drugs. His mother stated in this petition that he had pictured himself on Facebook holding a gun and displaying various gang signs. His mother's petition for protection from

15

abuse was granted and the defendant was adjudicated dependent and placed with his grandparents. In 2013 he was suspended from school for five days for bringing marijuana to school. While he was at the Ward home, he was charged and adjudicated of the charges of simple assault, terroristic threats and recklessly endangering another person.

As an adult, he was convicted of the charge of possession with intent to deliver a controlled substance in January of 2015. In November of 2015, he was found guilty following a bench trial before the Honorable Joseph Williams of the crime of robbery, serious bodily injury, and criminal conspiracy. On January 5, 2016, he pled guilty to receiving stolen property, although he had also been charged with burglary and theft by unlawful taking, which charges were withdrawn in exchange for his plea to the charge of receiving stolen property. In reviewing his continually aggressive and violent behavior, his failure to avail himself of the rehabilitation opportunities offered to him in the Juvenile Court system and his threat to kill his victim, it is clear that the sentence that was imposed upon him was not manifestly excessive but appropriate for the protection of the public, his rehabilitative needs and for protection of society in general.

This Court decided to run his sentence consecutive to the sentence imposed upon him by Judge Williams for the other robbery in which he was involved which followed almost the same pattern as the robbery in this case with the exception that he did not require his victim to strip. The

16

presentence report in this matter clearly showed an individual who was violent, who was armed with deadly weapons and made threats to use those deadly weapons if his desires were not met. In weighing all of the factors to be considered, it was clear that his sentence should be consecutive rather than concurrent which would have provided him with a volume discount for the commission of his crimes.

Brown filed a post-sentence motion seeking to modify his sentence in which he alleged that in light of Brown's young age, that he should be afforded an opportunity to reestablish his life since he had lost his educational opportunity and his ability to play football. None of these contentions impact the configuration of his sentence because Brown was willing to use a deadly weapon and threatened people with the use of that deadly weapon by stating that he would blow the victim's head off if she did not do what he said. Compounding his violent nature was the fact that he sought to demean and to degrade his victim by forcing her to strip off her clothes to ensure his getaway from this robbery. There was no basis that this Court saw that would necessitate the changing either the length of Brown's sentence or the fact that it should be served consecutive to his other sentence for robbery.

BY THE COURT:

_____, A.J.

DATED:    May 16, 2017

17